UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| PAUL CHANCE KINNISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) Civil Action No: SA-08-CA-421-XR |
| | ) |
| CITY OF SAN ANTONIO, J. BARRY ARCHER, | ) |
| MIKE CONSTANTINO, and | ) |
| REYES HERNANDEZ, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

On this date, the Court considered the Individual Defendants' Motion to Dismiss (docket no. 15). After careful consideration, the Court will grant in part and deny in part the motion.

**I. Background**

Defendant City of San Antonio, with the written consent of the Individual Defendants, removed this case on May 22, 2008, on the basis of federal question jurisdiction. Plaintiff asserts causes of action against the City, J. Barry Archer, in his individual capacity and in his official capacity as Development Services Director for the City,[1] Mike Constantino, in his individual capacity and in his official capacity as Development Services Manager for the City, and Reyes Hernandez, in his individual capacity and in his official capacity as Supervisor of the Dangerous Premises Department of the City's Department of Code Compliance.[2] Plaintiff alleges that he

---

[1] Defendants state that Mr. Archer is in fact the Assistant Director for the Development Services Department.

[2] Defendants state that Mr. Hernandez is the Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Services Department.

1

purchased the property at 332 E. Myrtle in San Antonio, and immediately thereafter contracted to have the foundation repaired. Plaintiff alleges that foundation repairs were in progress and the foundation had been secured against collapse or failure, but without notice to Plaintiff or the preceding owner (the Deepak Land Trust), the City demolished the house and outbuilding on the property.

Plaintiff's Amended Complaint asserts numerous state and federal causes of action related to the demolition, including: (1) violations of San Antonio's Code of Ordinances, Chapter 6, article VIII, § 6-175 in that Plaintiff was not provided notice of the accomplished abatement as required by the ordinance, the Dangerous Structures Determination Board was not immediately provided notice of the accomplished abatement, and Defendants did not follow the provisions of § 6-175 or would apply them on an *ad hoc*, capricious basis; (2) violation of certain sections of Texas Local Government Code chapter 214, which governs municipal regulation of dangerous structures, through the enactment of § 6-175 and its application to the subject property in violation of these sections; (3) violation of the due process clause, Article I, § 19, of the Texas Constitution; (4) violation of the takings clause, Article I, § 17, of the Texas Constitution; (5) violation of Procedural Due Process, Substantive Due Process, and Equal Protection under the Fourteenth Amendment of the United States Constitution, in that he was deprived of property without due process of law and in that he was denied equal protection because his property was demolished but not that of others similarly situated (this claim is asserted through § 1983); (6) violation of the Takings Clause of the Fifth Amendment of the United States Constitution, in that Plaintiff's property was taken without just compensation (asserted through § 1983); (7) violation of the Fourth Amendment of the United States Constitution, in that he was subjected to an unreasonable search and seizure by the Defendants' demolishing his

property without a warrant (asserted through § 1983)³; (8) "injury by motor vehicle or equipment" (negligence); (9) trespass to real property; (10) "intrusion on seclusion"; and (11) declaratory relief that the ordinance violates Article I, Sections 17 and 19 of the Texas Constitution, the Fourth, Fifth, and Fourteenth Amendment of the United States Constitution, and sections of the Local Government Code chapter 214, and (12) declaratory relief that § 6-175 is unconstitutionally void for vagueness.

The Individual Defendants move to dismiss pursuant to Rule 12(b)(6) on the following grounds: (1) the claims against the Individual Defendants in their official capacities should be dismissed as redundant because the City is already a named defendant; (2) the claims against them in their individual capacities under § 1983 should be dismissed on the basis of qualified immunity; and (3) the state-law tort claims against the Individual Defendants should be dismissed pursuant to section 101.106(a) of the Texas Tort Claims Act.

## II. Standard of Review

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). Since Individual Defendants previously filed an answer in this action, the Court will construe the current motion as a motion for judgment on the pleadings under 12(c). Alternatively, the Court may consider the motion as an untimely 12(b)(6) motion, since the Individual Defendants did timely raise these defenses in their answer. The standard for evaluating 12(b)(6) motions and 12(c) motions is the same. *Doe v.*

---

³ Plaintiff also alleges procedural and substantive due process violations under the Fourth Amendment. Am. Compl. ¶ 14.4 ("Plaintiff alleges that the actions of Defendants, within or without the aegis of an apparently duly ratified ordinance 6-175, constitute not only a procedural due process violation of the 4th Amendment, but an arbitrary and capricious violation of Plaintiff's due process rights under the 4th Amendment." The Court has found that these allegations are subsumed within the Fourth Amendment claim.

*MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

In considering a motion to dismiss under 12(b)(6) or 12(c), all factual allegations from the complaint should be taken as true. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Additionally, the facts are construed favorably to the plaintiff. *Id.* Courts may look only to the pleadings in determining whether a plaintiff has adequately stated a claim; consideration of information outside the pleadings converts the motion to one for summary judgment. FED. R. CIV. P. 12(d). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, __ (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level." *Id.* A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.*

### III. Analysis

**A. Official Capacity Claims**

Individual Defendants argue that Plaintiff's claims against them in their official capacities are redundant of the claims against the City and should be dismissed. Plaintiff contends that because claims under 42 U.S.C. § 1983 against municipalities cannot be based solely on respondeat superior liability and Individual Defendants "have made no showing that their conduct automatically subjects the City of San Antonio to liability," it is appropriate to bring suit against both the City and Individual Defendants in their official capacities.

A suit against a government official in his official capacity is a suit against the governmental entity. *Will v. Michigan Department of State Police*, 491 U.S. 58, 70 (1989); *Waltman v. Payne*, 535 F.3d 349 (5th Cir. 2008). In cases where the governmental entity itself is a defendant, claims against

4

specific officials in their official capacities are redundant and it is appropriate to dismiss them. *See Walton v. City of Milford, Tex.*, No. 3:06-CV-2291-L, 2008 WL 631240, at *5 (N.D. Tex. Feb. 28, 2008) (citing *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996)). Courts routinely dismiss official capacity claims as redundant in § 1983 actions. *See, e.g., Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 539 (W.D. Tex. 2007); *Van Horn v. Lopez-Beaver*, No. 3:06–CV-1734-L, 2007 WL 3224758, *4 (N.D. Tex. Oct. 31, 2007); *Walton*, 2008 WL 631240, at *5.

The Court grants this portion of the motion and dismisses all claims against the Individual Defendants in their official capacities as redundant.

**B. State Tort Claims**

Individual Defendants argue that dismissal of the state-law tort claims against them is required by § 101.106(a) of the Texas Tort Claims Act, which provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106(a). In the alternative, Individual Defendants argue that their actions are protected under the doctrine of official immunity because they were acting within the course and scope of their employment and Plaintiff has not alleged that they acted in bad faith. Plaintiff contends that his assertions that Individual Defendants' actions were unconstitutional is sufficient to allege bad faith. Plaintiff does not address Individual Defendants' arguments regarding the irrevocable election under the Texas Tort Claims Act.

The election of remedies portion of the Texas Tort Claims Act provides:

(a) The filing of a suit under this chapter against a governmental unit constitutes an

5

> irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
>
> (b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.
>
> (c) The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.
>
> (d) A judgment against an employee of a governmental unit shall immediately and forever bar the party obtaining the judgment from any suit against or recovery from the governmental unit.
>
> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.
>
> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106. The Individual Defendants move for dismissal under § 101.106(a). However, Plaintiff filed this suit against both the City and the Individual Defendants, and thus section 101.106(e) governs, not section 101.106(a). *Ibarra v. Harris County*, 243 Fed. Appx. 830, * 6 (5th Cir. 2007) ("In this case, both Harris County and its employees were sued; therefore, subsection (e) controls."); *Cervantes v. City of San Antonio*, Civ. NO. SA-06-CA-235-XR, 2008 WL 2557488 (W.D. Tex. June 23, 2008) ("Defendants Montes and Barnes rely on § 101.106(a) and (b) for their proposition as well as an interpretation of case law; however § 101.106(e) states that

it is necessary that Defendant City, not Defendants Montes and Barnes, file a motion requesting such relief."); *Hernandez v. City of Lubbock*, 253 S.W.3d 750, 756 (Tex. App.–Amarillo 2007, no pet.). If the employee could move to dismiss the claims against him under § 101.106(a) when both he and the governmental unit employer are sued, section 101.106(e)'s "express provision for dismissal on the motion of the governmental unit is unnecessary" and superfluous. *Hernandez*, 253 S.W.3d at 756.

The City has not filed a motion to dismiss under § 101.106(e), and thus the Individual Defendants have no automatic right to dismissal. *Ibarra*, 243 Fed. Appx. at * 6 ("Subsection (e) does not explicitly prohibit suits against both employee and governmental unit. Harris County's presence in this case does not entitle the individual officers to immunity from state-law claims."); *Hernandez*, 253 S.W.3d at 756 ("The terms of the statute provide for [the employee's] dismissal from the suit filed both against him and the City on the filing of a motion by the governmental unit. In the absence of a motion by the City, [the employee] was not entitled to dismissal pursuant to section 101.106.").[4]

---

[4] The Texas Supreme Court's decision in *Mission Consol. Indep. School Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) does not dictate a different result. In that case, the Court expressly noted that "[u]nder subsection (e), [the employee] would be entitled to dismissal of Garcia's suit against him *upon the ISD's filing of a motion*." *Id.* at 659 (emphasis added). It also discussed the application of subsection (b). The Court never expressly rejected the court of appeal's conclusion that subsection (a) applies only when the governmental entity alone is sued, and in fact implied that this conclusion was correct when it stated that, "[u]nder the Tort Claims Act's election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when suit is filed against the governmental unit only, *id.* § 101.106(a); (2) when suit is filed against both the governmental unit and its employee, *id.* § 101.106(e); or (3) when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit, *id.* § 101.106(f)." Thus, this language indicates that § 101.106(a) applies when the governmental unit alone is sued, while § 101.106(e) applies when they are sued together, as in this case.

Turning to the issue of official immunity, the motion to dismiss for failure to state a claim is denied. Official immunity is an affirmative defense, and plaintiffs are not ordinarily required to negate affirmative defenses in their pleadings or be subject to dismissal under Rule 12(b)(6). Individual Defendants point to no authority applying the burden-shifting framework and heightened pleading requirements for qualified immunity to state-law tort claims. *See Dreyer v. Yelverton*, 291 Fed. Appx. 571 (5th Cir. 2008) ("Under Texas law, however, Defendants, not [Plaintiff], have the burden for this element; they (government officials) must show they acted in good faith. *E.g., Telthorster v. Tennell*, 92 S.W.3d 457, 460-61 (Tex. 2002). (Conversely, as noted *supra*, when a government official pleads the qualified-immunity affirmative defense, the burden shifts to the plaintiff. *E.g., Michalik*[*v. Hermann*], 422 F.3d [252,] 262 [(5th Cir. 2005)].)") .

## C. Qualified Immunity

Individual Defendants also assert the affirmative defense of qualified immunity, contending that they were acting within their discretionary authority and within the course and scope of their employment and that their actions were objectively reasonable. Plaintiff contends that because Individual Defendants' actions were "patently violative of fundamental constitutional principles," the Individual Defendants are not entitled to qualified immunity.

Qualified immunity shields government actors from liability in the performance of discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). "As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

8

To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, this Court conducts a familiar two-step inquiry. First, the Court must ask whether the plaintiff has alleged facts to establish that the official violated the plaintiff's constitutional rights. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At the motion to dismiss stage, the Court examines "the defendant's conduct as alleged in the complaint." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). If the facts do not establish that the official violated the plaintiff's constitutional rights, the Court need not inquire further. *See Saucier*, 533 U.S. at 201. If they do, the official is nonetheless entitled to qualified immunity unless the court finds that the official's conduct was objectively unreasonable in light of clearly established law at the time of the state actions at issue. In some circumstances, the Court may decide only the second issue of whether the official's conduct violated clearly established law at the time. *Pearson v. Callahan*, __ U.S. __ (2009).

Once a government officer pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the employee's allegedly wrongful conduct violated clearly established law. *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). This burden requires the plaintiff to plead "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Plaintiff has filed an Amended Complaint, and the Court will analyze the factual allegations therein in ruling on the motion to dismiss.

Individual Defendants moved to dismiss the claims asserted in the original petition on the basis of qualified immunity. In response, Plaintiff sought leave to amend his complaint, and this Court granted such leave. Because the Individual Defendants asserted the defense of qualified

9

immunity in their Answer to the Amended Complaint, the Court will consider whether Plaintiff has alleged facts sufficient to overcome the defense with regard to all of Plaintiff's § 1983 claims asserted in the Amended Complaint.

**1. Fourth Amendment**

With regard to Plaintiff's Fourth Amendment claim, Plaintiff alleges that the Individual Defendants "subjected him to an unreasonable search and seizure and without warrant, and in the following particulars, to-wit: by demolishing the subject property without warrant." However, it was clearly established law in this Circuit in 2008 that no *per se* warrant requirement exists when the City seizes and demolishes property it determines to be a nuisance. *Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001). Plaintiff has not alleged any factual basis for the Fourth Amendment violation other than the lack of a warrant. Because Plaintiff's Fourth Amendment claim appears to be based solely on the fact that his property was demolished without a warrant, he fails to state a constitutional violation and he fails to establish that the Individual Defendants violated clearly established law when they allegedly participated in the demolition of his property without a warrant. Accordingly, the Individual Defendants are entitled to qualified immunity on the Fourth Amendment claim.

**2. Fifth Amendment Takings**

With regard to the Fifth Amendment claim, Plaintiff alleges that he was deprived of his property without just compensation, in violation of the Fifth Amendment. Plaintiff states that Defendants Archer and Constantino "initiated, orchestrated, or at a minimum, had personal knowledge of the demolition" and that "Archer and Constantino were acting in a supervisory capacity." Plaintiff further asserts that "Hernandez had direct operational control over the demolition." Plaintiff alleges that he had begun foundation repairs and had "corrected and secured

the foundation against any collapse or failure." Am. Compl. ¶ 7.2. Plaintiff alleges that "the subject property had, prior to the most recent designation of the subject property as being an 'imminent hazard' under 6-175, it was at least on one other prior occasion, been designated an 'imminent danger' under 6-175 but was then reclassified as <u>not</u> being an imminent danger and was yet <u>reclassified</u> as an imminent danger under 6-175." Am. Compl. ¶ 8.3.

While a taking of property that constitutes a nuisance is not a taking requiring just compensation, Plaintiff alleges, in essence, that the property was not a nuisance when it was destroyed. Destruction of property without just compensation under such circumstances would establish a Fifth Amendment violation. Whether the property was a nuisance is of course the key disputed fact issue. But, taking Plaintiff's allegations as true, and assuming he will be denied just compensation in his state-law inverse condemnation claim, Plaintiff has established the existence of a constitutional violation. Further, the right was clearly established at the time of the alleged conduct, such that the Individual Defendants could not reasonably believe their conduct to be lawful if they destroyed property that was not a nuisance. Accordingly, they are not entitled to qualified immunity at this time.

### 3. Fourteenth Amendment Procedural Due Process

With regard to the Fourteenth Amendment procedural due process claim, Plaintiff alleges that his property was demolished without any prior notice. Plaintiff alleges that the Individual Defendants did not take the minimum statutorily prescribed measures to locate and notify Plaintiff of the intended demolition.

Procedural due-process guarantees are invoked when a state actor deprives an individual of a protected life, liberty, or property interest. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)

("To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."). Plaintiff has alleged the existence of a property interest protected by due process. He alleges that he was not provided notice or an opportunity to be heard before being deprived of his property.

Prior notice and a hearing is not constitutionally required when there are exigent circumstances that do not allow the government to provide pre-deprivation process. Plaintiff alleges that the property was not a nuisance and that it had been secured against structural collapse; in other words, he alleges that the there were no exigent circumstances. Again, this issue boils down to the disputed fact issue of whether the buildings were structurally unsound. Taking Plaintiff's allegations as true, the Court finds that the Individual Defendants would violate clearly established law if they destroyed the property without notice and a hearing absent exigent circumstances. Accordingly, qualified immunity is not appropriate at this time.

### 4. Fourteenth Amendment Substantive Due Process

Plaintiff alleges that he was deprived of his property pursuant to the summary abatement ordinance, § 6-175, and that the ordinance has "unconstitutionally vague criteria" for determining whether a property is a "clear and imminent danger to the life, safety or property or any person." Section 6-175 provides:

> In cases where it appears to the code compliance officer, the fire chief, or the director of development services, that due to one or more structural conditions threatening the structural integrity of a building or structure, there is a clear and imminent danger to the life, safety or property of any person unless a dangerous building or structure, as defined in this article, is immediately repaired or demolished, especially in cases where such a very dangerous building or structure, is located within one thousand (1,000) feet of a public or private elementary school, middle school, high school, or

12

> a state recognized day care center, any or of those officials (the official) shall execute the immediate vacation and or repair or demolition of such very dangerous building or structure, regardless of the date of its construction.

Thus, to be subject to summary abatement under § 6-175, a building must (1) meet the definition of a "dangerous building or structure" as set forth in § 6-156; (2) have "one or more structural conditions threatening the structural integrity of [the] building or structure"; and (3) pose a "clear and imminent danger to the life, safety or property of any person" unless it is immediately repaired or demolished.

A city may not arbitrarily enter abatement orders or declare the existence of nuisances with no underlying standards. *Freeman v. City of Dallas*, 242 F.3d 642, 652-53 (5th Cir. 2001). Only "if the terms of an ordinance are so indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application" will it be deemed unacceptably vague. *Medlin v. Palmer*, 874 F.2d 1085, 1090 (5th Cir.1989) (citing *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)).

The qualified immunity analysis generally requires this Court to first determine whether Plaintiff has established a constitutional violation, *i.e.*, that the ordinance is unconstitutionally vague and its application therefore deprived him of his property in violation of his right to substantive due process. The Court may determine, however, whether the Individual Defendants violated a clearly established right such that their conduct was objectively unreasonable without determining that a constitutional violation has in fact occurred. *Pearson v. Callahan*, __ U.S. __ (2009). At the time of the demolition, it was not clearly established that an ordinance such as this one would be found unconstitutionally vague. The ordinance provides specific standards for determining whether the building or structure is a "dangerous building" under § 5-156, and requires that the building be

structurally unsound and pose an imminent danger. The ordinance is not patently unconstitutionally vague and has not been determined to be unconstitutionally vague, and thus the Individual Defendants would be objectively reasonable in applying the ordinance to the property in question. The Individual Defendants did not violate clearly established law in applying the ordinance, and they are thus entitled to qualified immunity on this claim.

### 5. Fourteenth Amendment Equal Protection

Plaintiff alleges that his property was demolished but not that of others similarly situated and that other properties were destroyed or abated using a different ordinance. The First Amended Complaint states that other properties were destroyed or abated by using "§ 6-157 instead of § 6-157." ¶ 12.3. The Court presumes that Plaintiff intended to state that other properties were destroyed or abated under § 6-157 (declaration of nuisance) instead of § 6-175 (emergency demolition).

Because Plaintiff is not asserting that he was treated differently because of his membership in a class, Plaintiff is attempting to assert a "class of one" equal protection claim. In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court recognized an equal protection claim based on a "class of one." To establish such a claim, the plaintiff must show that (1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment. *Id*. at 564. At the time of the alleged acts in this case, the "class of one" equal protection claim in the land use context was clearly established in the Fifth Circuit. *Nance v. New Orleans & Baton Rough Steamship Pilots Ass'n*, 174 Fed. Appx. 849, *5 (5th Cir. 2006); *Shipp v. McMahon*, 54 Fed. Appx. 412, *2 (5th Cir. 2002). Thus, taking Plaintiff's allegations as true, as this Court must, the Individual Defendants' alleged conduct would violate Plaintiff's clearly established constitutional right to equal protection in application of land-use regulations. Accordingly, qualified

14

immunity is denied at this time.

## Conclusion

Individual Defendants' Motion to Dismiss (docket no. 15) is GRANTED IN PART and DENIED IN PART. The motion is granted as follows:

(1) all claims asserted against the Individual Defendants in their Official Capacities are DISMISSED as redundant;

(2) Plaintiff's Fourth Amendment and Substantive Due Process claims against the Individual Defendants are DISMISSED on the basis of qualified immunity.

The motion is denied in all other respects. The Court notes that this denial is made at the pleading stage, and is thus without prejudice to Defendants re-asserting the defenses of qualified and official immunity via a motion for summary judgment.

It is so ORDERED.

SIGNED this 5th day of March, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE