# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| PAUL CHANCE KINNISON, § § *Plaintiff*, § § v. § § CITY OF SAN ANTONIO, J. BARRY § ARCHER, individually and in his official § capacity as Development Services Director § for the City of San Antonio, MIKE § CONSTANTINO, individually and in his § official capacity as Development Services § Manager for the City of San Antonio, and § REYES HERNANDEZ, individually and in § his official capacity as Supervisor of the § Dangerous Premises Department of the City § of San Antonio's Department of Code § Compliance, § § *Defendants*. § | Civil Action No. SA-08-CV-421-XR |

## ORDER ON MOTION TO DISQUALIFY PLAINTIFF'S EXPERT

On this date, the Court considered Defendants' motion to disqualify Plaintiff's Expert Richard L. Dugger (Docket Entry No. 65). After reviewing the motion, Plaintiff's response and supplemental response, and Defendants' reply, the Court DENIES Defendants' motion contingent upon Plaintiff's expert supplementing the report. The Court ORDERS Plaintiff to supplement the report no later than December 4, 2009, and further ORDERS that should Defendants choose to depose Mr. Dugger following the supplement, Plaintiffs shall make Mr. Dugger available and bear the costs of the deposition.

## Background

Plaintiff, Paul Chance Kinnison, filed suit against the City of San Antonio, J. Barry Archer, individually and in his official capacity as Development Services Director for the City of San Antonio, Mike Constantino, individually and in his official capacity as Development Services Manager for the City of San Antonio, and Reyes Hernandez, individually and in his official capacity as Supervisor of the Dangerous Premises Department of the City of San Antonio's Department of Code Compliance. Kinnison alleges that he purchased the property commonly known as 332 East Myrtle, San Antonio, Texas, and immediately thereafter hired a foundation contractor to make repairs to the foundation of the house. He alleges that on April 17, 2008, after the contractor had begun work on the foundation, the City of San Antonio, through the Defendants, demolished the house and outbuilding of his property without prior notice to him or the preceding owner, the Deepak Land Trust. Plaintiff contends the home was situated in a historic district and that he intended to renovate it, live in it, and eventually resell it for a profit. Kinnison claims that Defendants are liable for violations of city ordinances, state statutes, the Texas Constitution, and the U.S. Constitution; negligent operation of a motor vehicle; trespass; and intrusion on seclusion. He seeks a declaratory judgment, punitive and/or exemplary damages, and attorney's fees.

## Parties' Arguments

Defendants moved to disqualify Richard L. Dugger as an expert. (Joint Mot. to Disqualify Pl.'s Expert Richard L. Dugger (Sept. 30, 2009) [Docket Entry No. 65] ("Mot.").) They contend that the Dugger's opinion is unreliable, arguing that he is not qualified as an expert and that his opinion is based on mere speculation. (*Id.*) The Defendants further contend that Plaintiff's expert testimony is based on an improper measure of damages. (*Id.* at 8–9.) Plaintiff responds that fair market value

2

is based on the highest and best use for which the property is adaptable and needed. (Pl.'s Resp. to Def.s' Mot. to Disqualify Expert Richard L. Dugger (Oct. 12, 2009) [Docket Entry No. 67] ("Resp.").) Plaintiff argues that the highest and best use for which the property is adaptable and needed is refurbishment value of an existing property in that particular area (the Tobin Hill historic district). (*Id.*) Kinnison also submits a supplement to his response that includes an affidavit from Richard L. Dugger in which he describes market valuation and his methodology. (Pl.'s Supplemental Resp. to Def.s' Mot. to Disqualify Pl.'s Expert (Oct. 27, 2009) [Docket Entry No. 71] ("Suppl.").)

**Expert Testimony**

Kinnison designated Richard L. Dugger as an expert to testify on "the value of the subject [] based on industry accepted methodologies in the field of valuation." (Pl.'s Expert Designations (Feb. 12, 2009) [Docket Entry No. 50].) Mr. Dugger states that he will "offer valuation counseling related to the prospective value of the residential property assuming (as a hypothetical condition) that the home is refurbished in conformity with other refurbished homes in the Tobin Hill area of San Antonio." Letter from Richard L. Dugger to Tyler Rutherford, counsel for Plaintiff (Dec. 12, 2008) (Mot. ex. B) ("Report").

**Legal Standard**

Rule 702 provides for the admissibility of expert testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," and if a qualified witness provides testimony that (1) "is based upon sufficient facts or data," (2) "is the product of reliable principles and methods," and (3) "has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the court explains that district

courts must act as gatekeepers to ensure that expert testimony meets the standards of Rule 702. 509 U.S. 579, 589 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In this role as gatekeeper, the district court must determine that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. *Kumho Tire Co., Ltd. v. Carmichael* states that a trial judge "may consider several more specific factors that *Daubert* said might bear on a judges gate keeping determination." 526 U.S. 137,149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The role of this Court is to serve as a "gate-keeper," ensuring that an expert witness "'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 152). The court will consider the relevant reliability of the testimony of the expert witness using the wording of Rule 702 in light of the fact that the testimony concerns both a non-scientific technique as well as personal knowledge or experience.

**Analysis**

*A. Defendant's Qualifications*

Defendants briefly challenge Mr. Dugger's expertise stating that "he confirmed that he is not an expert in renovation or refurbishment." (Mot. ¶¶ 10–11.) The Fifth Circuit has established that "[a]s long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). Dugger's testimony focuses on the market value of the residential property. Mr. Dugger's qualifications state that he has been engaged in

appraisal contract work in the San Antonio, Texas-area since 1969, has attended appraisal courses, conducted appraisals of properties across the United States and Latin American countries, and is qualified to teach various courses. Report at 6. It is clear to the Court, based on Mr. Dugger's professional history, various designations from real estate organizations, and his professional licensing, that he is qualified to assess the market value of residential property.

*B. Reliability*

Defendants challenge the reliability of Plaintiff's expert, stating: "The bulk of his report details various conjectural refurbishing costs . . . ." (Mot. ¶ 8.) Defendants do not specifically challenge the methodology of Plaintiff's analysis; Defendants' motion focuses on an alleged incorrect assumption that underlies Mr. Dugger's analysis.[1] (*Id.* ¶ 11.) Defendants challenge Mr. Dugger's proposed testimony on the grounds that "it is not based on sufficient facts or data [but] entirely speculative in nature." (*Id.* ¶ 12.) While the Court will not evaluate Mr. Dugger's conclusions, *see Daubert*, 526 U.S. at 595, the Court will examine whether there are "sufficient facts or data" to support his conclusion so as to prevent it from being speculative. FED. R. CIV. P. 702. Dugger inspected the property, inspected the neighborhood, considered the

---

[1] Defendants argue "that opinion of value is founded entirely in speculation—speculation that Plaintiff would refurbish the property in a manner consistent with and comparable to that used in other homes in the area, not to mention speculation as to the costs associated with such a refurbishment . . . ." (Mot. ¶ 11.) The pleadings before the Court do not indicate that Mr. Dugger's testimony would be based on a scientific methodology. Thus, the Court concludes that *Daubert* factors typically used to evaluate expert testimony do not apply in this case, and the Court will evaluate the reliability of his prospective testimony based on his personal knowledge and experience. *See Kumho Tire Co.,* 526 U.S. at 150. As the Court has previously noted, Mr. Dugger has years of experience conducting appraisals to qualify him as an expert. *See supra* Part A. His report discusses the approach he utilized to render his conclusion and to determines the highest and best use of the property based on refurbishment of the home. *See* Report at 2–3. The Court can find no reason, and Defendants have not articulated why, the assessment of a value based on the refurbished value of the property constitutes an incorrect methodology.

development/redevelopment trends of the city, and the sales of approximately fifteen improved properties in the area within the last two years. Report at 2–3. Dugger explains the sales-method approach that he utilized to reach his conclusion, stating that he gathered the sales data from houses in the area and produced a dollar amount per square foot that was then multiplied by the square-footage of the demolished property.[2] There is no indication the data inputs utilized by Dugger are inappropriate to reach his conclusion via the sales-method he utilizes.

A district court should exclude expert testimony that relies on pure speculation. *See Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996). In his affidavit, Dugger recognizes that certain assumptions are involved in his assessment, but the conclusion is not unfounded. Aff. of Richard L. Dugger 2 (Oct. 27, 2009) (Supp. ex. A). Moreover, evaluating comparable sales is an acceptable method to ascertain value. *See City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001) ("If the goal of an appraisal is to ascertain market value, then logically there can be no better guide than the prices that willing buyers and sellers actually negotiate in the relevant market."). Duggert assesses the highest and best use of the property "upon completion of the refurbishment program." Report at 2. The Court is unable, as a matter of law, to determine whether such an assumption renders Duggert's conclusion unreliable. Texas courts have accepted expert testimony regarding the feasibility of refurbishment as a factor in estimating pre-demolition value. *See City of El Paso v. W.E.B. Investments*, 950 S.W.2d 166, 172 (Tex. App.—El Paso 1997, pet. denied). If Defendants question the accuracy of Mr. Duggert's testimony, then "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky admissible evidence." *Daubert*, 509

---

[2]Defendants do not challenge this as an acceptable method of valuation.

U.S. at 596.

## C. Relevance

Defendants further challenge Dugger's opinion, stating that he addresses the incorrect measure of damages as a matter of law. (Mot. ¶¶ 14–19.) Plaintiff contends that the laws of Texas control the measure of damages to which Plaintiff might be entitled and that Plaintiff can only recover the value of the property as it existed before demolition. (*Id.* ¶ 18.) Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue." FED. R. EVID. 702. This condition goes primarily to relevance. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002) (citing *Daubert*, 509 U.S. at 591). If Plaintiff's expert testified on a measure of damages barred as a matter of law, then his testimony would be irrelevant and not of assistance to the trier of fact.

In consideration of Defendants' argument, the Court will assume—without deciding—that Texas law governs the damage award. If a plaintiff prevails upon her claims, she is entitled to recover the value of the property as it existed before destruction. *City of Texarkana v. Reagan*, 247 S.W. 816, 818 (1923); *cf. W.E.B. Investments*, 950 S.W.2d at 171 (noting that trial court erred in disregarding decision from jury based on instruction for damages to calculate the measure of damages as the difference between the fair market value of the property immediately prior to the demolition and the fair market value of the property after its demolition). Defendants argue that Texas law calls for valuation of the property to be based on the condition of the property as it existed before demolition. (Def.s' Reply to Pl.'s Resp. to Def.s' Mot. to Disqualify Pl.'s Expert 4 (Oct. 26, 2009) [Docket Entry No. 70] ("Reply").) That appears to be without question. The issue here is whether Dugger's testimony allows the fact-finder to ascertain that market value.

The "value" established prior to demolition and after demolition is the fair market value of the property, which "includes its value *for any use to which it may be put*." *S. Tex. Elec. Co-op., Inc. v. Ermis*, 396 S.W.2d 955, 958 (Tex. Civ. App.—Corpus Christi 1965, no writ) (emphasis added).

> "Fair market value" entitles the owner to receive the amount that a willing buyer would pay in cash to a willing seller at the time of the taking. [*United States v. 564.54 Acres of Land*, 441 U.S. 506, 511, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979)]; *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex. 1972). The determination of fair market value may be influenced by factors which would affect the price a prudent and willing buyer and seller would exchange for the property exclusive of the fact of condemnation. *City of Fort Worth v. Corbin*, 504 S.W.2d 828, 830 (Tex. 1974).

*City of Houston v. Religious of the Sacred Heart of Tex.*, 811 S.W.2d 734, 737 (Tex. App.—Houston [1st Dist.] 1991, *aff'd*, 836 S.W.2d 606 (Tex. 1992). Notably, the jury may "consider all of the uses to which the property is reasonably adaptable and for which it is, or in all reasonable probability will become, available within the foreseeable future." *State v. Windham*, 837 S.W.2d 73, 77 (Tex. 1992). This does not prevent the fact-finder from hearing about refurbishment of a residential unit in determining the market value of the property. If the appraisal were based on a different use of the property or refurbishment that was not reasonably probable in the foreseeable future, then the Court may have a sufficient basis to exclude the testimony. *See Sw. Bell Tel. Co. v. Radler Pavilion Ltd. P'ship*, 77 S.W.3d 482, 486 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Here, Dugger's report assesses a value based on refurbishment of residential units sold in the neighborhood within the last two years that were either "partially or fully refurbished" with particular attention being "given to homes in the general size range of the appraised property." Report at 2. Defendants do not point out, nor does Dugger's assessment indicate, a changed use in the property or an

unreasonably probable refurbishment to warrant disqualification of the expert.[3]

*D. Gatekeeper Function of the Court and Sufficiency of Evidence to Show Market Value*

Dugger's report, however, only provides a portion of the complete picture necessary to determine the market value of the property as it existed prior to demolition. It appears that refurbishment value can be a factor (an input) that the trier of fact will use to determine the market value (the output).[4] As it stands, Dugger is qualified and his testimony meets the reliability and relevancy requirements to establish *a factor* that the trier of fact will use to determine the market value.

The Court recognizes its role as the gatekeeper in this situation and must ensure that the testimony would not mislead the jury. If Dugger were allowed to testify on his report based on the refurbished value of the property, Plaintiff could receive a windfall as the refurbished value alone

---

[3]Even though Defendants claim repeatedly that the improvement contemplated in Dugger's report are "speculative," there is no indication, based on the available report or deposition excerpts, that the expert's assumptions rely on "purely speculative uses to which the property might be adaptable but which are wholly unavailable . . . ." *Sw. Bell Tel. Co. v. Radler Pavilion Ltd. P'ship*, 77 S.W.3d 482, 486 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)

[4]The state court in *City of El Paso v. W.E.B. Investments* described the expert testimony that was provided to the trial court:
> Relying on photographs of the property and a report from Fishkin Engineering commissioned by W.E.B. discussing the feasibility of rehabilitating the structure, W.E.B.'s expert witness Steve Simon, estimated the pre-demolition value of the land at $6,800 and the structure at $38,210. Mr. Simon also estimated that the property would have a value of $61,000 if it were made habitable and brought into compliance with city building codes. Mr. Simon viewed the property after demolition and reviewed the evaluation with the appraisal district and determined the postdemolition value to be $1,360.

950 S.W.2d 166, 172 (Tex. App.—El Paso 1997, pet. denied). Plaintiff's expert Steve Simon did not merely testify as to the value of the property if it were refurbished. His testimony includes the feasibility of rehabilitating the structure.

does not account for the costs necessary to conduct the refurbishment or the feasibility of refurbishment. It is feasible that characteristics of the home would render certain standard renovations impossible or cost-prohibitive. While Dugger's report states that he reviewed pictures of the home prior to its demolition, his report does not indicate how limiting factors—such as cost or structure—impacted his assessment of the refurbished value. Such information is necessary before the Court can allow his testimony to proceed. While Dugger's testimony relies on sufficient facts or data to assess the refurbished value of the home, this alone—without an explanation as to how refurbishment costs impacted his analysis—is insufficient to assess the pre-demolition fair market value of the home.

## Conclusion

Plaintiff's expert, Richard L. Dugger, meets the requirements of Federal Rule of Evidence 702 to testify as to the refurbished value of the property. The Court declines to disqualify Dugger as an expert at this time. As a result, Defendants' joint motion to disqualify Plaintiff's expert is hereby DENIED. Plaintiff, however, is ORDERED to supplement Dugger's report no later than December 4, 2009, to address the Court's concerns regarding what the Court interprets as incomplete testimony. Following Mr. Dugger's report, it is further ORDERED that Defendants will be allowed to again depose Mr. Dugger if they so choose, with the costs to be borne by Plaintiff.

It is so ORDERED.

SIGNED this 5th day of November, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE