IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PAUL CHANCE KINNISON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-08-CV-421-XR |
| | § | |
| CITY OF SAN ANTONIO, J. BARRY ARCHER, Individually and in his official capacity as Development Services Director for the City of San Antonio, MIKE CONSTANTINO, Individually and in his official capacity as Development Services Manager for the City of San Antonio, and REYES HERNANDEZ, Individually and in his official capacity as Supervisor of the Dangerous Premises Department of the City of San Antonio's Department of Code Compliance, | § § § § § § § § § § § § | |
| | § | |
| *Defendants*. | § | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT & MOTION TO DISMISS**

On the date, the Court considered Defendants J. Barry Archer, Mike Constantino, and Reyes Hernandez's motion for summary judgment (Docket Entry No. 64). Having considered the motion, Plaintiff's response, and the evidence provided, the Court GRANTS Defendants Archer, Constantino, and Hernandez's motion.

**Background**

On April 17, 2008, the City of San Antonio demolished two structures at 332 E. Myrtle Street in San Antonio, Bexar County, Texas. Plaintiff Paul Chance Kinnison owned the property. Between April 8 and 17, 2008, Alice Guajardo, a Code Enforcement Officer for Defendant City of San

Antonio ("the City") inspected the structures on the property.[1] After being contacted by the Code Enforcement Officer, Senior Building Inspector Ramiro Carrillo[2] then visited 332 E. Myrtle and recommended that the house be scheduled for emergency demolition, finding that the structure posed an imminent threat to life, safety, and/or property. The City demolished the structure on April 17, 2008.

Kinnison claims the demolition of the property violated the procedures established in Article VIII, Section 6-175 of the City of San Antonio Code of Ordinances ("the ordinance").[3] Kinnison

---

[1] Guajardo was supervised by Defendant Reyes Hernandez, who is Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Development Department.

[2] Carrillo works for the City of San Antonio Planning and Development Services Department.

[3] The version of the ordinance in effect at the time the City demolished the property read:
Sec. 6-175. Emergency cases; summary abatement by city officials.
(a) In cases where it appears to the code compliance officer, the fire chief, or the director of development services, that due to one or more structural conditions threatening the structural integrity of a building or structure, there is a clear and imminent danger to the life, safety or property of any person unless a dangerous building or structure, as defined in this article, is immediately repaired or demolished, especially in cases where such a very dangerous building or structure, is located within one thousand (1,000) feet of a public or private elementary school, middle school, high school, or a state recognized day care center, any or of those officials (the official) shall execute the immediate vacation and or repair or demolition of such very dangerous building or structure, regardless of the date of its construction. Such summary action shall require concurrence from at least one other of the aforesaid officials. In the case of summary demolition, concurrence of the director of development services shall be required. Such concurrence shall include a determination that under the circumstances no other abatement procedure is reasonably available except demolition. The official taking action shall thereafter immediate provide notice to the DSDB, of the accomplished abatement; and to the owner and lienholders/mortgagees of said dangerous building. All costs,

2

filed suit against the City of San Antonio; J. Barry Archer, individually and in his official capacity as Acting Director of the Development Services Department; Michael Constantino, individually and in his official capacity as Development Services Manager in the Planning and Development Services Department; and Reyes Hernandez, individually and in his official capacity as Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Services Department. Kinnison asserted multiple causes of action, including violations of Section 6-175 of the City's Code of Ordinances; violation of Chapter 214 of the Texas Local Government Code; violation of Article I, Sections 17 and 19 of the Texas Constitution; violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; "injury by motor vehicle of equipment"; trespass to real property; intrusion on seclusion; and a request for declaratory relief.

**Procedural History**

Kinnison filed suit against the City, Archer, Constantino, and Hernandez in the 73rd Judicial District Court of Bexar County, Texas.[4] Defendants timely removed this case.[5] Defendants Archer,

---

including asbestos and special or hazardous waste removal/disposal, of such emergency summary repair, vacation, or demolition of such dangerous building shall be collected in the manner provided by law.

(b) The foregoing emergency abatement action shall be executed no later than seventy two (72) weekday hours, exclusive of weekends and holidays, after the official views the subject building or structure.
. . . .
SAN ANTONIO, TEX., CODE § 6-175 (2002).

[4]Pl.'s Original Pet., May 16, 2008 (attached as exhibit to Docket Entry No. 1).

[5]Notice of Removal, May 22, 2008 (Docket Entry No. 1).

Constantino, and Hernandez filed a motion to dismiss,[6] and Plaintiff amended his complaint.[7] The Court dismissed claims against the individual defendants in their official capacities as redundant to Kinnison's claims against the City, and the Court dismissed Kinnison's Fourth Amendment and Substantive Due Process claims against the individual defendants.[8]

Following briefing from the parties, the Court evaluated its jurisdiction over this matter and the ripeness of Plaintiff's constitutional claims.[9] The Court found that Kinnison's Fifth Amendment claim was unripe, the as-applied substantive due process challenge as vague was ripe, the as-applied Equal Protection claim under the Fourteenth Amendment was ripe, the as-applied Fourth Amendment claims were ripe, the procedural due process and substantive due process claims were subsumed under the Fifth Amendment Takings and Fourth Amendment claims and/or required further factual development to become ripe, and the facial procedural due process claim was ripe. Plaintiff's facial Fourth Amendment claim based on the lack of warrant was foreclosed by the Fifth Circuit's decision in *Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001) (en banc). The Court exercised supplemental jurisdiction over Plaintiff's state statutory and state constitutional claims and ruled that Kinnison could pursue his unripe claims in the alternative to and contingent upon resolution of his state inverse condemnation claim.

---

[6]Mot. to Dismiss, April 3, 2009 (Docket Entry No. 13).

[7]1st Am. Compl., Oct. 15, 2008 (Docket Entry No. 28).

[8]Order on Mot. to Dismiss, March 5, 2009 (Docket Entry No. 53).

[9]Order, Mar. 2, 2009 (Docket Entry No. 52).

The individual defendants moved for summary judgment,[10] Plaintiff has responded,[11] and the individual Defendants have replied.[12] In spite of Plaintiff's multiple motions to amend his complaint, he failed to file a Second Amended Complaint. Consequently, the live pleading in this case is Plaintiff's First Amended Complaint. Moreover, the City has moved to dismiss the individual defendants pursuant to state statute.[13] *See* TEX. CIV. PRAC. & REM. CODE § 101.106(e).

**Plaintiff's Pending Causes of Action Against the Individual Defendants and Their Motion**

In light of the Court's order on the individual defendants' motion to dismiss, the following claims remain against the individual defendants:

1. violation of Article VIII, Section 6-175 of the San Antonio Code of Ordinances;

2. violation of provisions of the Texas Local Government Code;

3. violation of Article I, Section 19 of the Texas Constitution;

4. violation of Article I, Section 17 of the Texas Constitution;

5. a claim pursuant to 42 U.S.C. § 1983 for violation of procedural due process under the Fourteenth Amendment of the United States Constitution;

6. a claim pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

---

[10] Def.s' Mot. for Summ. J., Sept. 30, 2009 (Docket Entry No. 64).

[11] Pl.'s Resp. to Def.s' Mot. for Summ. J., Nov. 9, 2009 (Docket Entry No. 74).

[12] Def.s' Reply to Pl.'s Resp. to Def.s' Mot. for Summ. J., Nov. 23, 2009 (Docket Entry No. 76).

[13] City of San Antonio's Mot. to Dismiss Individual Def.s Per TCPRC § 101.106(e) (contained in Def.. City of San Antonio's Mot. for Summ. J. at 13, Sept. 30, 2009 (Docket Entry No. 63)). Plaintiff response to this motion to dismiss is included in his response to the City's motion for summary judgment. *See* Pl.'s Resp. to Def. City of San Antonio's Mot. for Summ. J. at 15, Nov. 9, 2009 (Docket Entry No. 75).

7. a claim pursuant to 42 U.S.C. § 1983 for violation of the Fifth Amendment of the United States Constitution; and

8. three claims based in state law (*i.e.*, "injury by motor vehicle," trespass to real property, and intrusion on seclusion).

Archer, Constantino, and Hernandez move for summary judgment on the grounds of qualified immunity with respect to Plaintiff's Fourteenth Amendment procedural due process claim, Plaintiff's Fourteenth Amendment equal protection claim, and Plaintiff's Fifth Amendment takings claim. They also argue that the City of San Antonio has moved to dismiss the state based causes of action against them pursuant to section 101.106(e) of the Texas Civil Practice & Remedies Code. The City moves to dismiss the state law claims against the individual defendants.

## Individual Defendants' Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is "material" if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). To avoid summary judgment, the nonmoving party must adduce admissible evidence that creates a fact issue concerning the existence of every essential component of that party's case and unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**B. Analysis**

Section 1983 does not convey substantive rights on its own but rather provides a vehicle by which a plaintiff may sue for deprivation of rights guaranteed under the Constitution or laws of the United States. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985). To prevail on a section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829, 125 S.Ct. 153, 160 L.Ed.2d 44 (2004).

Archer, Constantino, and Hernandez claim they are entitled to qualified immunity. Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct.

2727, 73 L.Ed.2d 396 (1982); *Flores v. City of Palacios*, 381 F.3d 391, 393–94 (5th Cir. 2004).

In reviewing a motion for summary judgment based on qualified immunity, a district court undertakes a two-step analysis.[14] *Flores*, 381 F.3d at 395. First, a court must determine whether a statutory or constitutional right would have been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002). If no constitutional right would have been violated were the allegations established, then the inquiry ends. *Saucier*, 533 U.S. at 201.

If a violation is properly alleged, then the court proceeds to the second step in which it determines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). A right is clearly established when its contours are sufficiently clear so that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Finally, if the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin*, 306 F.3d at 272. An official's conduct is objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution. *Hampton v.*

---

[14]The two-step procedure for determining qualified immunity established in *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), is no longer mandatory. *See Pearson v. Callahan*, -- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). Courts are free to consider the second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821.

8

*Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

Once a government officer pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the employee's allegedly wrongful conduct violated clearly established law. *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). This burden requires the plaintiff to plead "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

*1. J. Barry Archer*

The demolition of Kinnison's house and accessory structure was not based upon the affidavit or approval of J. Barry Archer. On April 10, 2008, J. Barry Archer signed an affidavit approving the demolition of the property at 332 E. Myrtle Street. No action was taken pursuant to that affidavit because the affidavit pertained to only one structure on the property. On April 15, 2008, Director of the Development Services Department Roderick J. Sanchez signed the affidavit that formed the basis of the demolition of the two structures on Kinnison's property. David D. Garza, Director of Housing and Neighborhood Services, also approved the demolition.

Kinnison claims that e-mail traffic to and from Archer shows that Archer was involved in the classification of the house as an imminent hazard.[15] The e-mail communications pertain to the City's evaluation of the property in 2006 and not in 2008. The evidence is clear that the house and

---

[15]Kinnison fails to include any document with his response in support of his allegation. The Court reviewed copies of e-mail communications attached to Kinnison's First Amendment Complaint.

accessory structure were demolished pursuant to a subsequent evaluation. Kinnison fails to refute the Defendants' contention that Archer's affidavit approving demolition was rendered moot by the affidavit signed by Roderick Sanchez on April 15, 2008. Furthermore, he fails to present any specific facts to show how Archer treated him differently from similarly situated individuals. Consequently, Kinnison cannot pursue his constitutional claims against J. Barry Archer.

*2. Mark Constantino*

Kinnison argues that Mike Constantino was "instrumental in formulating . . . the criteria or methodology of the [report used by Carrillo to evaluate the demolished structures]." Kinnison claims that under a summary judgment standard "this presents some evidence that Constantino had policy-making authority and foundational involvement in the destruction of the Kinnison house." Plaintiff fails to plead claims of specific conduct that gives rise to a constitutional violation. A review of the testimony from Constantino's deposition fails to prove that he had direct involvement in the preparation of the original form of the report used by Carrillo in his evaluation of the Kinnison house. Defendants correctly note that any changes Constantino made to the form of the report had nothing to do with the substance of the report. Furthermore, Kinnison presents no evidence that Mike Constantino had direct involvement in the evaluation of the property that resulted in its demolition on April 17, 2008. Constantino testifies that he did not directly or indirectly supervise the dangerous premises investigator or the Senior Building Inspector. He states that he did not participate in any discussions regarding the demolition of the structure on April 17, 2010.[16]

---

[16]Constantino states: "I did not participate in any discussion(s), or have any input regarding or make any recommendation to J. Barry Archer, Roderick J. Sanchez, or David D. Garza regarding the demolition of the structure and accessory structure located at 332 E. Myrtle Street on April 17, 2008." Aff. of Mark Constantino 2 (Sept. 24, 2009).

Consequently, Kinnison cannot pursue his constitutional claims against Mike Constantino.

*3. Reyes Hernandez*

Under the facts alleged, Kinnison cannot show that Hernandez violated a clearly established statutory or constitutional right that a reasonable person would have known. "Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Here, Hernandez attests that he was the Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Services Department. In that capacity he supervised dangerous premises investigators, including the investigator who evaluated Kinnison's property. According to Hernandez, he would review the case file provided to him by the investigator and present it to the Director of the Development Services Department who would then review the file and determine whether the building posed a clear and imminent danger.[17] Hernandez disclaims any authority regarding the decision to declare the structures a danger or schedule them for immediate demolition.[18] Kinnison presents no evidence to show that Hernandez violated a clearly established

---

[17]Hernandez states:
> As the Supervisor of the Dangerous Premises Section it was my responsibility to review the case file provided to me by the dangerous premise[s] investigator and present the case file to the Acting Director or Director of the Development Services Department for his review and determination whether the building or structure was a clear and imminent danger to the life, safety or property of any person and that under the circumstances no abatement procedure other than immediate demolition is reasonably available.

Aff. of Reyes Hernandez 2 (Sept. 25, 2009).

[18]Hernandez states further: "I did not initiate, orchestrate or have any direct operational control over the demolition of the structure and accessory structure located at 332 E. Myrtle Street on April 17, 2008. Although I was Alice Guajardo's supervisor, my role as her supervisor, as her work related to 332 E. Myrtle Street was concerned, was simply to ensure the file contained the

statutory or constitutional right that a reasonable person would have known. Plaintiff is therefore unable to rebut the defense of qualified immunity. As a result, Kinnison cannot prove his claims for violations of 42 U.S.C. § 1983 against Hernandez.

**City of San Antonio's Motion to Dismiss Pursuant to Texas Statute**

The City moves to dismiss all of Kinnison's claims based in state law against Archer, Constantino, and Hernandez pursuant to the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.106(e) (Vernon 2005). Kinnison provides a brief response in opposition with little analysis to argue that the Texas Tort Claims Act is inapplicable to its "non-Texas Tort Claims Act claims."

In a recent opinion, this Court examined the dismissal of similar claims brought by a Plaintiff against the City of San Antonio.[19] *RBIII, Inc. v. City of San Antonio*, No. SA-09-CV-119-XR (W.D. Tex. Feb. 19, 2010). The analysis is applicable here.

> Section 101.106(e) provides for the dismissal of claims brought under the Texas Tort Claims Act against a governmental entity's employees upon the motion of the governmental entity. TEX. CIV. PRAC. & REM. CODE § 101.106(e).[20] The Texas Supreme Court has declared that all tort theories of recovery alleged against a governmental unit are presumed to be brought under the Texas Tort Claims Act. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) ("Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the

---

paperwork" *Id.* at 2.

*Id.* at 2–3.

[19]The Court's analysis is consistent with the Fifth Circuit's recent review of the Texas Tort Claims Act. *See Bustos v. Martini Club Inc.*, -- F.3d ---, 2010 WL 744301 (5th Cir. Mar. 5, 2010) (upholding dismissal of plaintiff's common-law claims of recovery against defendants).

[20]The statute provides: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e).

government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106."). Here, [Kinnison] has elected to sue the City of San Antonio and [Archer, Constantino, and Hernandez, employees] of the City. The City, a governmental unit under the statute, has moved to dismiss [Kinnison]'s state law theories of recovery pursuant to section 101.106(e). As a result, [Kinnison]'s state tort claims for "injury by motor vehicle," trespass to real property, and intrusion on seclusion are dismissed against [Archer, Constantino, and] Hernandez.

[Kinnison] also seeks damages from [Archer, Constantino, and] Hernandez for [their] alleged violation of the city ordinance, state statute, and the Texas Constitution.[21] In *Mission Consolidated Independent School District v. Garcia*, the Texas Supreme Court held that the Texas Tort Claims Act applies to all tort claims of recovery. *Garcia*, 253 S.W.3d at 659. In *Garcia*, the court interpreted 101.106(e) in the context of the other subsections of section 101.106. *See id.* In light of the claims and procedural posture of the case, the court evaluated subsection (e) in conjunction with subsection (b), which operates to bar an entire suit against a governmental entity based on the same subject matter if the plaintiff elects to only sue the

---

[21]In a recent opinion, a Texas court of appeals examined the application of section 101.106(e) to claims seeking damages for alleged violations of the Texas Constitution. *See City of Arlington v. Randall*, -- S.W.3d ---, 2009 WL 4757272, at *3–4 (Tex. App.—Fort Worth 2009, pet. filed). The court declared that the plaintiff's claims to obtain damages for violations of the Texas Constitution were brought under the Texas Tort Claims Act while a request for declaratory judgment based on constitutional violations did not fall under the Act. *Id.* at *4 ("To the extent that [the plaintiff] sought damages for alleged constitutional violations, his claims were brought 'under the [TTCA]' for purposes of section 101.106(e). . . . But to the extent that [the plaintiff sought a declaratory judgment based on [the defendant's] alleged constitutional violations, he did not file suit 'under the [TTCA].'").

This Court, Judge Frank Montalvo presiding, declined to examine the application of section 101.106(e) to every state law claim presented by a plaintiff because sufficient grounds existed to dismiss the claims on the grounds of official immunity. *Gonzalez v. City of El Paso*, No. EP-05-CA-447-FM, 2006 WL 2827259, at *2 (W.D. Tex. Sept. 7, 2006).

The City of San Antonio's motion to dismiss does not provide any briefing regarding the applicability of section 101.106(e) to [Kinnison]'s claims against Hernandez for violations of the city ordinance, the state statute, or the Texas Constitution. A motion for summary judgment on the grounds of official immunity is not before the Court.

13

entity's employee in the initial suit.[22] *Id.* ("We agree with the [the governmental entity] that to the extent subsection (b) applies, it bars *any suit* against the governmental unit regarding the same subject matter, not just suits for which the Tort Claims Act waives immunity or those that allege common-law claims."). The court recognized that subsection (b) differs from the other subsections of 101.106 because they contain the limiting phrase "under this chapter." *Id.* ("Since we give effect to all words in a statute, "under this chapter" must operate to make the scope of (a), (c), (e), and (f) different from that of (b).").

In this case, the City has moved to dismiss [Archer, Constantino, and Hernandez] from this suit. By filing a claim under the Texas Tort Claims Act against the City, [Kinnison] is barred from seeking recovery against [Archer, Constantino, and] Hernandez regarding the same subject matter. TEX. CIV. PRAC. & REM. CODE § 101.106(a).[23] Unlike subsection (b), which "bars any suit against the governmental unit regarding the same subject matter," subsection (a) contains the limiting phrase "under this chapter." *See Garcia*, 253 S.W.3d at 659–60. In accordance with the Texas Supreme Court's explanation of the Texas Tort Claims Act, to "give effect to all words in the statute," and recognizing that the phrase "under this chapter" "must operate to make the scope of [subsection] (a) . . . different from that of (b)", the Court is unable to dismiss the claims asserted by [Kinnison] based on violations of the city ordinance, state statutory law, and the Texas Constitution.[24]

*Id.*

---

[22]Subsection (b) reads: "The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents." TEX. CIV. PRAC. & REM. CODE § 101.106(b).

[23]Subsection (a) reads: "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106(a).

[24]The Court is guided by the Texas Supreme Court's explanation in *Mission Consolidated School District v. Garcia*, which interpreted the 2003 amendments to the statute by the Texas Legislature. An intermediate court's opinion provides additional analysis on the language of the Texas Tort Claims Act. *See Tex. Bay Cherry Hill, L.P. v. City of Forth Worth*, 257 S.W.3d 379, 400–01 (Tex. App.—Fort Worth 2008, no pet.).

**Conclusion**

The Court GRANTS Defendants Archer, Constantino, and Hernandez's motion for summary judgment. As a result, Kinnison is unable to pursue claims against the individual Defendants pursuant to 42 U.S.C. § 1983 for violations of procedural due process under the Fourteenth Amendment, equal protection under the Fourteenth Amendment, and the takings clause of the Fifth Amendment. The Court GRANTS IN PART AND DENIES IN PART the City of San Antonio's motion to dismiss claims against Archer, Constantino, and Hernandez pursuant to Texas Civil Practice & Remedies Code § 101.106(e). Plaintiff's claims for injury by motor vehicle, trespass to real property, and intrusion on seclusion are DISMISSED against the individual Defendants. The remaining claims against Archer, Constantino, and Hernandez are: violation of the city ordinance, violation of Chapter 214 of the Texas Local Government Code, and violations of the Texas Constitution.

It is so ORDERED.

SIGNED this 8th day of March, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE