**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PAUL CHANCE KINNISON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. SA-08-CV-421-XR |
| | § | |
| CITY OF SAN ANTONIO, J. BARRY | § | |
| ARCHER, Individually and in his official | § | |
| capacity as Development Services Director | § | |
| for the City of San Antonio, MIKE | § | |
| CONSTANTINO, Individually and in his | § | |
| official capacity as Development Services | § | |
| Manager for the City of San Antonio, and | § | |
| REYES HERNANDEZ, Individually and in | § | |
| his official capacity as Supervisor of the | § | |
| Dangerous Premises Department of the City | § | |
| of San Antonio's Department of Code | § | |
| Compliance, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On the date, the Court considered Defendant City of San Antonio's motion for summary

judgment (Docket Entry No. 63). Having considered the motion, Plaintiff's response, and the

evidence provided, the Court GRANTS IN PART AND DENIES IN PART Defendant City of San

Antonio's motion.

## Background

The case involves the demolition of two structures at 332 E. Myrtle Street, in San Antonio,

Texas. Plaintiff Paul Chance Kinnison purchased the property from Deepak Land Trust and, in his

pleading, states he intended to renovate and live in the property.[1]

On or about April 8, 2008, Alice Guajardo, a Code Enforcement Officer for Defendant City of San Antonio, inspected the house at 332 E. Myrtle Street. The inspection was in response to a telephone call to the City's non-emergency customer service system regarding a dangerous premises. Guajardo found the house on the property to be unsecured and vacant, and she declares that the house posed a danger to the public. She states that there was fire damage and deterioration to the home's foundation, exterior walls, and roof system, and the foundation was separating from beams, floor joists, rotting sills, and leaning piers. Guajardo prepared the necessary documents to have the property demolished.[2] She contacted Richard Brownlee, trustee of the Deepak Land Trust, which was listed as the owner of record. Guajardo claims that Brownlee told her that the property had been sold, but he could not identify the owner.

At Guajardo's request, City Senior Building Inspector Ramiro Carrillo inspected the property on April 10, 2008. Carrillo found the foundation, walls, and roof to be in poor structural condition, and he deemed the house and its accessory structure an imminent threat to life, safety, and/or

---

[1]Neither party apprised the Court of the specific date when Kinnison purchased the property from Deepak Land Trust. In their pleadings, the parties state that the house at 332 E. Myrtle Street, San Antonio, Texas, was deemed previously an imminent danger but not demolished. No summary judgment evidence is available regarding the facts and circumstances regarding this issue or whether the Deepak Land Trust or another individual was the owner of the property at that time.

[2]Guajardo obtained ownership records from the Bexar County Appraisal District, records from the City of San Antonio tax system, prepared photographs, prepared an Investigator Report Form and Nuisance Definitions Report, prepared a geographic information system mapping report, procured an environmental survey form, obtained an affidavit from the City's Director of Development Services, notified the City of San Antonio Historic Preservation Office, notified City of San Antonio Council Member Mary Alice Cicneros, searched city records to determine if any work permits had been requested or approved for the property, procured an affidavit from the City's Director of Housing & Neighborhood Services, prepared forms for the City public service department to disconnect utility services, and prepared the demolition work order.

property. Carrillo recommended that the house be demolished to Defendant J. Barry Archer, Acting Director of the Development Services Department. Archer reviewed the materials submitted by Carrillo and accepted his recommendation on April 10, 2008.

Carrillo then recommended that both the house and accessory structure be scheduled for emergency demolition to Roderick J. Sanchez, Director of the City's Development Services Department. Sanchez reviewed the materials submitted by Carrillo and accepted his recommendation. On April 15, 2008, Sanchez declared:

> Due to the extensive damage and its unsafe structural condition, it was my determination that the main and accessory structures located at 332 E. Myrtle presented a clear and imminent threat to life, safety, and/or property necessitating an immediate demolition. In my judgment, no other abatement procedure was reasonably available under these circumstances.

On April 16, 2008, Director of Housing and Neighborhood Services David D. Garza concurred in the assessment that the structures at 332 E. Myrtle presented a clear and imminent threat to life, safety, and/or property necessitating an immediate demolition.

On April 17, 2008, the City demolished the house and accessory structure. Kinnison received a telephone call from Mr. Cuellar of Cuellar Foundation, which had been contracted by Kinnison to repair the foundation of the house and had begun repairing the property on April 16, 2008. While Mr. Cuellar was present, the City's demolition crew arrived and demolished the house and accessory structure. City records do not indicate a permit or application for foundation work was obtained for the property. On April 28, 2008, the City sent post-demolition written notice to the Deepak Land Trust, which was listed as the owner of record for the property.

Kinnison claims the demolition of the property violated the procedures established in Article

VIII, Section 6-175 of the City of San Antonio Code of Ordinances ("the ordinance").[3]  (The City

amended the ordinance in October 2008.)  Kinnison filed suit against the City of San Antonio; J.

Barry Archer, individually and in his official capacity as Acting Director of the Development

Services Department; Michael Constantino, individually and in his official capacity as Development

Services Manager in the Planning and Development Services Department; and Reyes Hernandez,

_____

[3]The version of the ordinance in effect at the time the City demolished the property read:
Sec. 6-175.  Emergency cases; summary abatement by city officials.
(a)  In cases where it appears to the code compliance officer, the fire chief, or the director of development services, that due to one or more structural conditions threatening the structural integrity of a building or structure, there is a clear and imminent danger to the life, safety or property of any person unless a dangerous building or structure, as defined in this article, is immediately repaired or demolished, especially in cases where such a very dangerous building or structure, is located within one thousand (1,000) feet of a public or private elementary school, middle school, high school, or a state recognized day care center, any or of those officials (the official) shall execute the immediate vacation and or repair or demolition of such very dangerous building or structure, regardless of the date of its construction.  Such summary action shall require concurrence from at least one other of the aforesaid officials.  In the case of summary demolition, concurrence of the director of development services shall be required.  Such concurrence shall include a determination that under the circumstances no other abatement procedure is reasonably available except demolition.  The official taking action shall thereafter immediately provide notice to the DSDB, of the accomplished abatement; and to the owner and lienholders/mortgagees of said dangerous building.  All costs, including asbestos and special or hazardous waste removal/disposal, of such emergency summary repair, vacation, or demolition of such dangerous building shall be collected in the manner provided by law.

(b) The foregoing emergency abatement action shall be executed no later than seventy two (72) weekday hours, exclusive of weekends and holidays, after the official views the subject building or structure.
. . . .
SAN ANTONIO, TEX., CODE § 6-175 (2002).

4

individually and in his official capacity as Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Services Department. Kinnison asserted multiple causes of action, including violation of Section 6-175 of the City's Code of Ordinances; violation of Chapter 214 of the Texas Local Government Code; violations of Article I, Sections 17 and 19 of the Texas Constitution; violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; "injury by motor vehicle of equipment"; trespass to real property; intrusion on seclusion; and a request for declaratory relief.

## Procedural History

Kinnison filed suit against the City, Archer, Constantino, and Hernandez in the 73rd Judicial District Court of Bexar County, Texas.[4] Defendants timely removed this case.[5] Defendants Archer, Constantino, and Hernandez filed a motion to dismiss,[6] and Plaintiff amended his complaint.[7] The Court dismissed claims against the individual defendants in their official capacities as redundant to Kinnison's claims against the City, and the Court dismissed Kinnison's Fourth Amendment and Substantive Due Process claims against the individual defendants.[8]

Following briefing from the parties, the Court evaluated its jurisdiction over this matter and the ripeness of Plaintiff's constitutional claims.[9] The Court found that Kinnison's Fifth Amendment

---

[4]Pl.'s Original Pet., May 16, 2008 (attached as exhibit to Docket Entry No. 1).

[5]Notice of Removal, May 22, 2008 (Docket Entry No. 1).

[6]Mot. to Dismiss, April 3, 2009 (Docket Entry No. 13).

[7]1st Am. Compl., Oct. 15, 2008 (Docket Entry No. 28).

[8]Order on Mot. to Dismiss, March 5, 2009 (Docket Entry No. 53).

[9]Order, Mar. 2, 2009 (Docket Entry No. 52).

claims were unripe, the as-applied substantive due process challenge as vague was ripe, the as-applied Equal Protection claim under the Fourteenth Amendment was ripe, the as-applied Fourth Amendment claims were ripe, the procedural due process and substantive due process claims were subsumed under the Fifth Amendment and Fourth Amendment claims and/or required further factual development to become ripe, and the facial procedural due process claim was ripe. Plaintiff's facial Fourth Amendment claim based on the lack of warrant was foreclosed by the Fifth Circuit's decision in *Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001) (en banc). The Court exercised supplemental jurisdiction over Plaintiff's state statutory and state constitutional claims and ruled that Kinnison could pursue his unripe claims in the alternative to and contingent upon resolution of his state inverse condemnation claim.

The City moved for summary judgment,[10] and Plaintiff has responded.[11] In spite of Plaintiff's multiple motions to amend his complaint, he failed to file a Second Amended Complaint. Consequently, the live pleading in this case is Plaintiff's First Amended Complaint. The City filed a supplement to its motion for summary judgment under the belief that Plaintiff had filed his amended complaint.[12]

### Plaintiff's Pending Causes of Action Against the City and the City's Motion

The following claims are pending against the City of San Antonio:

1. violation of Article VIII, Section 6-175 of the San Antonio Code of Ordinances;

---

[10]Def. City of San Antonio's Mot. for Summ. J., Sept. 30, 2009 (Docket Entry No. 63).

[11]Pl.'s Resp. to Def. City of San Antonio's Mot. for Summ. J., Nov. 9, 2009 (Docket Entry No. 75).

[12]Def. City of San Antonio's Supplemental Mot. for Summ. J., Jan. 5, 2010 (Docket Entry No. 85).

2. violation of provisions of the Texas Local Government Code;

3. violation of Article I, Section 19 of the Texas Constitution;

4. violation of Article I, Section 17 of the Texas Constitution;

5. a claim pursuant to 42 U.S.C. § 1983 for violation of procedural due process under the Fourteenth Amendment of the United States Constitution;

6. a claim pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

7. a claim pursuant to 42 U.S.C. § 1983 for violation of substantive due process under the Fourteenth Amendment of the United States Constitution;

8. a claim pursuant to 42 U.S.C. § 1983 for violation of the Fourth Amendment of the United States Constitution;

9. an unripened claim pursuant to 42 U.S.C. § 1983 for violation of the Fifth Amendment of the United States Constitution;

10. three claims based in state law (*i.e.*, "injury by motor vehicle," trespass to real property, and intrusion on seclusion);

11. declaratory relief that the ordinance violates state statute, the Texas Constitution, and the U.S. Constitution; and

12. declaratory relief that the ordinance is void for vagueness

The City moves for summary judgment on each of Plaintiff's claims.

## Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477

U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is "material" if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). To avoid summary judgment, the nonmoving party must adduce admissible evidence that creates a fact issue concerning the existence of every essential component of that party's case and unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**Analysis**

*A. Texas Declaratory Judgment Act*

The Court begins its analysis by evaluating Kinnison's claims under the Texas Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE § 37.001–37.011 (Vernon 2008). Kinnison requests declarations that the previous City ordinance is void because it facially (and in its application) violates the Texas Constitution, violates the United States Constitution, and is drafted and implemented in contravention of the Texas Local Government Code. The City moves for

summary judgment on Plaintiff's claim for declaratory judgment. The City argues that unless Kinnison can show that resolving the issue by way of declaratory judgment can resolve future disputes between the parties, he is not entitled to declaratory relief on top of the other claims he has made. Kinnison responds that the existence of another adequate remedy does not bar the right to maintain an action for declaratory judgment.[13]

"A declaratory judgment, by its nature, is forward looking; it is designed to resolve a controversy and prevent future damages. It affects a party's behavior or alters the parties' legal relationship on a going-forward basis." *Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 95 S.W.3d 650, 660 (Tex. 2009). "A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004). "Ordinarily declaratory relief will not be granted where the cause of action has fully matured and invokes a present remedy at law." *US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 278 (Tex. App.—Dallas 2005, no pet.).

---

[13]The City also claims that Kinnison has failed to comply with the requirements of the Texas Declaratory Judgment Act in seeking to have the City's ordinance declared unconstitutional. Pursuant to Section 37.006 of the Texas Civil Practice & Remedies Code:

> In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

TEX. CIV. PRAC. & REM. CODE § 37.006(b). Failure to serve the Attorney General prevents a court from evaluating the constitutionality of an ordinance. *See Estate of Ross*, 672 S.W.2d 315, 317 (Tex. App.—Eastland 1984, writ ref'd n.r.e.), *cert. denied* 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143. However, failure to serve the Attorney General does not prevent a Court from providing relief on other grounds. *Lumberton Mun. Util. Dist. v. Cease*, 596 S.W.2d 601, 603 (Tex. Civ. App.—Beaumont 1980, no writ). Here, Kinnison provides no evidence that he properly served the Attorney General.

A case is moot when circumstances change during litigation that no longer presents a case or controversy. *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The case can be rendered moot "if subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

The City amended the challenged ordinance in October 2008. There is nothing in the record to support an allegation that the City would invite future litigation by reenacting the previously challenged statute. Consequently, Plaintiff's request for declaratory judgment that the previous ordinance is unconstitutional or that it fails to meet the requirements of the Texas Local Government Code is moot.

## B. *Violation of the City Ordinance*

Kinnison alleges that the City violated Section 6-175 of the City of San Antonio Code of Ordinances by (1) failing to provide the property owner notice of the accomplished abatement, (2) failing to notify the City's Dangerous Structure Determination Board of the abatement, and (3) "applying the ordinance in an ad hoc or capricious basis" by previously designating, and then de-designating the house as an imminent danger. Plaintiff claims he "suffered monetary damages" as a result of the City's actions.

The City moves for summary judgment arguing that (1) Kinnison fails to plead any manner in which any alleged failed notice caused any damages, (2) the City has produced evidence on summary judgment that it complied with the ordinance, and (3) any previous classification of the structure does not amount to a violation of the ordinance. Kinnison fails to acknowledge any of the City's arguments and responds with three alleged violations that he has not pled: (1) that the subject

property was demolished more than seventy-two weekday hours after officials viewed the building or structure, (2) that officials failed to view the structure as required by the statute, and (3) J. Barry Archer's determination that there was no available alternative to demolition was unfounded.[14]

First, the City is correct that Kinnison fails to plead any manner in which any failed notice caused damages. The ordinance does not provide a private cause of action by which a plaintiff can seek damages. Second, Kinnison provides no evidence to establish his claim that the designation, de-designation, and re-designation of the property as an imminent danger was a violation of the ordinance. Third, the City established that it provided post-abatement notice to the Dangerous Structure Determination Board. On April 28, 2008, the City sent a notice to the Board that the

---

[14]The Court has reviewed the evidence provided by the City and Plaintiff's pleadings in a light favorable to the non-moving party. In spite of Plaintiff's failure to plead these points, the Court notes that the City complied with the ordinance regarding the issues raised in Kinnison's response. The ordinance names the "code compliance director, the fire chief, or the director of development services" as the officials charged with determining whether a building poses a clear and imminent danger. SAN ANTONIO, CODE § 6-175(a). In the case of a summary demolition, the director of development services must concur and determine that no other abatement procedure is reasonably available. *Id.* The ordinance further states that the emergency abatement action is to occur within seventy-two weekday hours "after the official views the subject building or structure." *Id.* § 6-175(a).

The property was viewed by Alice Guajardo, the City's Dangerous Premises Investigator, and Ramiro Carrillo, the City's Senior Building Inspector. David Garza, Director of Housing and Neighborhood Services, and Roderick J. Sanchez, Director of the Development Services Department, determined that the property was an imminent danger. Based on the evaluations provided by their inspectors, Garza and Sanchez made their assessment as required by the ordinance.

Here, the requisite officials evaluated the reports provided by their subordinates to make their determinations in compliance with the ordinance.

Furthermore, the property was demolished within seventy-two weekday hours of Sanchez and Garza's review of the property. Sanchez signed his affidavit on April 15, 2008, Garza signed his affidavit on April 16, 2008, and the demolition occurred on April 17, 2008. The affidavit signed by Acting Director J. Barry Archer was superseded by the affidavit signed by Roderick Sanchez. In any case, while the Director of the Development Services Department does not state the facts supporting his decision to authorize demolition in the affidavit, he does declare that "no other abatement procedure was reasonably available under these circumstances." Nothing more is required by the ordinance.

structures at 332 E. Myrtle Street in San Antonio, Texas, had been demolished as an emergency in accordance with the ordinance.

The post-abatement notice provided by the City requires further evaluation. On April 28, 2008, the City sent a notice of the emergency demolition to Richard Brownlee, Trustee of the Deepak Land Trust, which was the previous owner of the property. Although property records list the Deepak Land Trust as the owner of the property, Kinnison testified that he was the owner of the property at the time it was inspected and demolished. However, even if it is unclear that the City complied with the ordinance in providing post-deprivation notice to the owner, Kinnison fails to establish how this violation entitles him to monetary damages. Furthermore, Kinnison was aware of the demolition immediately after it occurred on April 17, 2010. Consequently, the Court grants summary judgment on Plaintiff's claim for violations of the City ordinance.

*C. Violations of Texas Local Government Code*

Kinnison claims that the City has failed to comply with requirements of the Texas Local Government Code in its administration of the ordinance. Specifically, he claims that (1) the City did not follow the prescribed measures to locate and notify him in violation of Texas Local Government Code § 214.001, (2) the City failed to follow additional standards for notification under section 214.0011, (3) the City failed to notify the San Antonio Historic Review Board in violation of section 214.00111, and (4) the structure was declared a historic landmark.[15] Plaintiff seeks monetary

---

[15]Kinnison's Complaint references section 214.002 but asserts no facts to support a claim for a violation of this provision. In taking judicial notice of the state statute, the Court notes that section 214.002 involves a municipality's decision to demolish a property that "is likely to endanger persons or property . . . ." TEX. LOCAL GOV. CODE § 214.002. There are no requirements for notice pursuant to this provision; however, the City has not moved for summary judgment regarding this specific section nor have the parties discussed whether or how this section applies to this case.

12

damages based on these violations. The City moves for summary judgment, claiming that it complied with the notification requirements in the statute and the notice provisions for historic properties. Plaintiff responds to the City's arguments regarding notice and includes references to provisions that are not part of his amended complaint. The Court examines each of the provisions in Plaintiff's Complaint.

1.      Section 214.0011

Section 214.0011 of the Texas Local Government Code authorizes a municipality to establish "minimum standards for the use and occupancy of buildings in the municipality." TEX. LOCAL GOV. CODE § 214.0011(a) (Vernon 2008). The remainder of the statute pertains to a municipality's authority to secure a building that violates the minimum standards. *See id.* § 214.001(b)–(f). None of the facts alleged nor the evidence before the Court involves the City securing or attempting to secure the structures on Kinnison's property. Section 214.0011 of the Texas Local Government Code is therefore inapplicable to this case.

2.      Section 214.00111

Section 214.00111 involves the preservation of a substandard building as a historic property. *Id.* § 214.00111. The statute specifically states that the section "does not apply to an owner-occupied, single family dwelling." *Id.* § 214.00111(b). Regarding the provisions related to a historic property, Plaintiff has adduced no evidence that the structure was a historic landmark or that it comes within the scope of the statute. The City does not dispute that the property was within a historic district, and it provides evidence that it notified the City's historic preservation board, in this case the City of San Antonio Historic Preservation Office, of the intended demolition in compliance with the statute. Furthermore, the statute states that before notice is sent or conducted under section

13

214.001, "the historic preservation board of a municipality *may* review a building . . . ." *Id.* § 214.00111(c). The historic review board was within its discretion to decline a review of Kinnison's property. Therefore, Kinnison cannot claim a violation of section 214.00111.

3. Section 214.001

Kinnison provides a list of notice requirements pursuant to section 214.001 that he alleges the City failed to follow. Section 214.001 authorizes a municipality to demolish a substandard structure and establishes standards for the ordinance, hearings, and notice. *Id.* § 214.001. The evidence before the Court shows that the City did not provide notice of a hearing to the owner, hold a public hearing, issue an order for the owner to take specific action within a reasonable time, notify the mortgagee and lienholder of the notice, or conduct other requirements of the statute. *Id.* Furthermore, the activities undertaken by the City's Dangerous Premises Investigator do not establish that she complied with the requirements of the statute to make a diligent effort to identify Kinnison as the owner of the property.[16] Therefore, Defendant's motion for summary judgment

_____

[16]Under Texas law:

> A municipality satisfies the requirements of this section to make a diligent effort, to use its best efforts, or to make a reasonable effort to determine the identity and address of an owner, a lienholder, or a mortgagee if the municipality searches the following records:
>
> > (1)  county real property records of the county in which the building is located;
> > (2)  appraisal district records of the appraisal district in which the building is located;
> > (3)  records of the secretary of state;
> > (4)  assumed name records of the county in which the building is located;
> > (5)  tax records of the municipality; and
> > (6)  utility records of the municipality.

TEX. LOCAL GOV. CODE § 214.001(q) (Vernon Supp. 2009). Here, Dangerous Premises Investigator Alice Guajardo checked Bexar County Tax Appraisal records and City of San Antonio tax records, both of which identified Deepak Land Trust as the owner. Guajardo contacted and spoke with

14

regarding section 214.001 is denied.

### D. Violation of Article I, Section 19 of the Texas Constitution

Kinnison seeks damages under Article I, Section 19 of the Texas Constitution. The City argues that Kinnison does not have a recoverable cause of action for money damages. Kinnison does not respond to this argument. Article I, Section 19 reads: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." TEX. CONST. art. I., § 19. Texas courts have held that the "due course of law" clause of section 19 provides no private cause of action for damages. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148–49 (Tex. 1995) ("[T]he text of the Texas Bill of Rights cuts against an implied private right of action for the damages sought because it explicitly announces the consequences of unconstitutional laws."); *Patel v. City of Everman*, 179 S.W.3d 1, 14 (Tex. App.—Tyler 2004, pet. denied) (holding that plaintiff's claim seeking damages for demolition of buildings was unavailable). Kinnison cannot seek monetary damages pursuant to Article I, Section 19 of the Texas Constitution. As a result, Defendant's motion for summary judgment is granted on Plaintiff's claim for monetary damages.

### E. Violation of Article I, Section 17 of the Texas Constitution

Kinnison alleges a claim pursuant to Article I, Section 17 of the Texas Constitution.

---

Deepak Land Trust trustee Richard Brownlee, who told her that Deepak Land Trust no longer owned the property. Guajardo then inquired as to whether any permits had been filed with the City that would identify the new owner. No permits had been filed. The state statute upon which the City relies identifies six items that a municipality is to conduct to "make a diligent effort, to use its best efforts, or to make a reasonable effort to determine the identity and address of an owner . . . ." *Id.* The list is conjunctive rather than disjunctive. Guajardo does not declare that the City evaluated Bexar County real property records, records of the secretary of state, assumed name records, or utility records.

Article I, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ." Tex. Const. art. I, § 17. To recover under Article I, Section 17, a plaintiff must prove that "(1) the government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use." *Patel*, 179 S.W.3d at 8. The term "public use" includes matters of public health and safety. *City of Houston v. Crabb*, 905 S.W.2d 669, 674 (Tex. App.—Houston [14th Dist.] 1995, no writ). A city has the authority to abate public nuisances without compensation. *LJD Properties, Inc. v. City of Greenville*, 753 S.W.2d 204, 207 (Tex. App.—Dallas 1988, writ denied). However, a public entity is to "defend its actions by proof of a great public necessity. Mere convenience will not suffice." *Steele v. City of Houston*, 603 S.W.2d 786, 792 (Tex. 1980).

In its motion for summary judgment, the City admits that a municipality seeking to defend a claim under Article I, Section 17 must show that the property was a nuisance on the day it was demolished. *See Patel*, 179 S.W.3d at 11; *Crabb*, 905 S.W.2d at 674; *see also City of Dallas v. Stewart*, No. 05-07-1244-CV, 2008 WL 5177168, at *2 (Tex. App.—Dallas Dec. 11, 2008, pet. granted). The evidence here demonstrates that city inspectors evaluated Kinnison's property on April 8 and 10, 2008. The City's officials signed their affidavits declaring the property an imminent danger on April 15, 2008, and April 16, 2008. The City demolished the structures on April 17, 2008.

It appears, however, that foundation repair work had begun on the property as of April 16, 2008. During Kinnison's deposition, he discusses a photograph of the property taken the day before the demolition that showed Cuellar Foundation had begun to repair the foundation of the house. Dep. of Paul C. Kinnison 74:1–75:25 (Apr. 14, 2009). Kinnison testified that Cuellar had completed at least one day of work on the property prior to the demolition. *Id.* at 111:13–22. Kinnison also

disputes whether the structures posed an imminent hazard or dangerous condition prior to the time that Cuellar Foundation began working on the property. *Id.* at 92:7–11.

The City argues that if this Court were to require municipalities to show that they complied with procedural due process while also showing that the properties were in fact nuisances on the very day they were demolished, the "net effect of such stringent requirements would be to deprive municipalities of their lawful defenses to carrying out of the very police powers those municipalities are required to enforce." The holding in *City of Houston v. Crabb*, which has been followed by appellate Texas courts, requires municipalities to show that the demolished structures are in fact nuisances on the very day they were demolished. Barring any statement to the contrary from the Texas Supreme Court, the Court is inclined to follow the consistent standard of the Texas appellate courts.

The Court denies the City's motion for summary judgment regarding Kinnison's claim pursuant to Article I, Section 17 of the Texas Constitution.

*F. Violation of the Fourteenth Amendment*

Kinnison claims that the City violated his rights by depriving him of "due process of law [and] den[ying] him the equal protection of the law", asserting that the violations "are both procedural and substantive." The City moves for summary judgment on Plaintiff's claims, arguing that none of Kinnison's rights have been violated in this case.

1. Procedural Due Process

Procedural due-process guarantees are invoked when a state actor deprives an individual of a protected life, liberty, or property interest. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) ("To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected

life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."). The government must provide reasonable notice to an individual of its intention to deprive him of life, liberty, or property. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The individual must have a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Mullane*, 339 U.S. at 313–14, 70 S.Ct. 652. Moreover, "[a]s the Supreme Court has acknowledged, 'the public interest demands that all dangerous conditions be prevented or abated.'" *Freeman v. City of Dallas*, 242 F.3d 642, 652 (5th Cir. 2001) (quoting *Camara v. Mun. Court of City & County of S.F.*, 587 U.S. 523, 537, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). Prior notice and a hearing is not constitutionally required when there are exigent circumstances that prevent the government from providing a pre-deprivation process. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 677–80, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Freeman v. City of Dallas*, 186 F.3d 601, 607 (5th Cir. 1999) ("[W]hen pre-deprivation procedural safeguards cannot be expected to protect against the type of deprivation involved, we find that a post-deprivation hearing satisfies due process."). Deprivations of property do not violate the Due Process Clause if adequate and meaningful post-deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984).

The City presents the testimony of its inspectors that the structures on the property were in imminent danger of collapse. Kinnison challenges the inspector's conclusions with the unsupported claim that the inspections "were cursory, desultory and woefully inadequate." "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must . . . set out specific facts showing

18

a genuine issue for trial." FED. R. CIV. P. 56(e)(2). Again, however, Plaintiff provides no evidence to support its contention that the inspections were inadequate.

Kinnison also argues that the City's failure to provide pre-demolition notice constituted a violation of due process. Due process is a flexible concept that varies with the facts of each case, and the requirements of due process require the court to apply the test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under the test, the Court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

First, Kinnison's private interest is in his property, which he procured for its value and in which to live. The destruction of the building was final and permanent.

Second, the Court does not have enough information before it to assess the risk of erroneous deprivation under the procedures used by the City. The Court is unable to determine what constitutes a structure in imminent danger of collapse compared to a dilapidated home that eventually becomes a nuisance. Moreover, the Court is especially mindful that the ordinance had no provision for pre-demolition notice. The value of notice as an additional procedural safeguard would substantially diminish the chance of an erroneous deprivation of property. Notably, the City's inspector testifies that when preparing her report, she learned that Deepak Land Trust was not the current owner but does not testify that she checked County property records. *See Kornblum v. St.*

19

*Louis County, Mo.*, 72 F.3d 661, 663 (8th Cir. 1995) (requiring notice to owners if names and addresses were reasonably ascertainable) (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1982)). Kinnison received no contemporaneous notice. *Cf. Graden v. Rhodes*, 345 F.3d 1225, 1237 (11th Cir. 2003) (finding that exigent circumstances did not justify postponement of notice for individuals evicted from structure judged unfit for occupancy). Moreover, the City's demolition team could have simply asked the Cuellar Foundation employees present about the owner of the property.

Third, the City has an interest in protecting the health, safety, and welfare of its citizens. The Court cannot ascertain on the available evidence, however, that the City's interest in the public welfare warranted this abatement procedure.

For the aforementioned reasons, the Court is unable to grant summary judgment on Plaintiff's claim that the City violated Kinnison's constitutional right to procedural due process.

2. Equal Protection

The City challenges Kinnison's claim for a violation of the Equal Protection Clause, stating that the City did not treat others differently who were similarly situated. The City provides testimony from its Senior Building Inspector that other properties were deemed nuisances by the City and demolished pursuant to the City's ordinance. In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the Supreme Court recognized an equal protection claim based on a "class of one." To establish such a claim, the plaintiff must show that (1) he was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment. *Id.* at 564. Kinnison does not respond directly to the City's motion on the Equal Protection claim except to argue that the property was previously classified a dangerous structure,

but not demolished, and then it was reclassified.  He argues that this "fact . . . falls into the lap of [the] equal protection claim; why was the previous owner of 332 E. Myrtle treated differently than Kinnison?"[17]  The City argues, and has provided testimony, that exigent circumstances necessitated the emergency demolition.  While Plaintiff shows that he was treated differently than one other person who was similarly situated, he fails to present any specific evidence to create a material issue of fact that there was no basis for the disparate treatment.  Consequently, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for a violation of the equal protection clause.

### 3.  Substantive Due Process

The City moves for summary judgment on Plaintiff's claim for a violation of substantive due process, arguing that it is "apparently based on the claim that City Ordinance 6-175 has unconstitutionally vague criteria."  The Court reads Kinnison's response as furthering this argument. Kinnison fails to present facts that distinguish his substantive due process claim from a claim that the ordinance is unconstitutionally vague.  The City has amended its ordinance so the issue is moot.

### G.  Violation of the Fifth Amendment

The City seeks summary judgment on Plaintiff's takings claim arguing that Kinnison's property presented an imminent danger when the demolition was made.  The City states that it would be unfair for repair work to have been done on the foundation without a permit from the City. Kinnison responds by questioning the conduct of the inspections.  While a taking of property that constitutes a nuisance is not a taking requiring just compensation, the City has not established that the structures constituted a nuisance.  As a result, the Court denies the City's motion for summary

---

[17]There is no competent summary judgment evidence to support Plaintiff's claim.

21

judgment regarding Plaintiff's claim under the Fifth Amendment.

*H. Violation of the Fourth Amendment*

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects against violations of the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV; *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Property is seized when "'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal*, 506 U.S. at 61 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). Only if the court concludes that a seizure has occurred will it then consider the seizure's reasonableness, a determination requiring "a careful balancing of governmental and private interests." *Id.* at 61–62; *Freeman v. City of Dallas*, 242 F.3d 642, 649 (5th Cir. 2001).

Kinnison brought a claim against the City for violating the Fourth Amendment on the grounds that he was subjected to an unreasonable search and seizure and without a warrant. The City moves for summary judgment on Kinnison's Fourth Amendment claim, arguing that no warrant is required when a property is deemed to be a nuisance. Kinnison did not respond to the City's motion.

The text of the Fourth Amendment does not require a warrant for every government search or seizure. *Freeman*, 242 F.3d at 647. "In the context of reviewing civil administrative and regulatory enforcement of laws enacted pursuant to the traditional police power, Fourth Amendment reasonableness means non-arbitrariness." *Id.* at 654. A City can demonstrate reasonableness by adhering to its ordinance and procedures as a prelude to the abatement action. *Id.* at 653. At this stage, however, it is not clear that the City has fully adhered to its ordinance. Moreover, the City has not established that the structures were a nuisance when they were demolished on April 17, 2008.

As a result, the Court denies the City's motion for summary judgment on Plaintiff's Fourth Amendment claim.

## I. *State law claims*

Kinnison has asserted three common law causes of action against the City: trespass to land, intrusion on seclusion, and "injury by motor vehicle." The City has moved for summary judgment on these claims. Kinnison failed to respond to the City's arguments.

### 1. Intentional Torts

Kinnison claims that the City is liable for trespass to land and intrusion on seclusion. Trespass is an intentional tort. *Harris County v. Cypress Forest Pub. Util. Dist. of Harris County*, 50 S.W.3d 551, 554 (Tex. App.—Houston [14th Dist.] 2001, no pet.). An intrusion on seclusion is likewise an intentional tort. *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (stating that plaintiff must show intrusion was intentional). The waiver of sovereign immunity does not extend to intentional torts under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (Vernon 2005); *Harris County*, 50 S.W.3d at 553. The City moves for summary judgment on Kinnison's intentional tort claims, arguing that they are barred by the Texas Tort Claims Act. The City asserts its immunity to Plaintiff's intentional tort claims, and the Court therefore grants summary judgment for the City on Plaintiff's claims for trespass and intrusion on seclusion.

### 2. Injury by Motor Vehicle or Equipment

Plaintiff makes a negligence claim against the City, stating that the City "caused [a] motor vehicle or motor-driven equipment to be operated or used negligently and such negligence proximately caused Plaintiff's damages." The City argues that Kinnison has pled facts showing

intentional acts.

The Texas Tort Claims Act bars claims for intentional torts against governmental entities even if the facts that would show an intentional tort are framed as a claim for negligence. *See Harris County v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Coldwell v. City of Deer Park*, No. H-06-01094, 2007 WL 2021769 (S.D. Tex. July 9, 2007) (stating that the plaintiff's state tort claims hinged on intentional conduct and were barred by the Texas Tort Claims Act). "A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Cabazos*, 177 S.W.3d at 111. Here, Kinnison alleged that the City demolished the structures on his property after wrongly declaring them an imminent danger. Kinnison presents no evidence to demonstrate a claim for negligence. Because Kinnison cannot maintain his claims under the Texas Tort Claims Act, and because the City has not otherwise waived its sovereign immunity, the Court finds that there is no genuine issue of material fact with respect to Kinnison's claim for "injury by motor vehicle or equipment," and the City is accordingly entitled to judgment as a matter of law.

## Conclusion

Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

1.  Defendant's motion for summary judgment on Plaintiff's claim pursuant to the Texas Declaratory Judgment Act is granted. No claims pursuant to the Texas Declaratory Judgment Act remain. Because the ordinance has been amended, Plaintiff's facial challenges to the ordinance and request for a declaration that it violates state statute are moot.

2.  Defendant's motion for summary judgment on Plaintiff's claim that the City violated San Antonio, Code § 6-175 is granted.

24

3. Defendant's motion for summary judgment on Plaintiff's claim that the City violated provisions of the Texas Local Government Code is granted in part and denied in part. Plaintiff may not assert a claim for a violation of sections 214.0011 and 214.00111. The motion for summary judgment is denied regarding section 214.001.

4. Defendant's motion for summary judgment on Plaintiff's claim that the City violated Article I, Section 19 of the Texas Constitution is granted. Plaintiff may not seek monetary damages for a claimed violation.

5. Defendant's motion for summary judgment on Plaintiff's claims that the City violated Article I, Section 17 of the Texas Constitution is denied.

6. The Court renders the following rulings on Plaintiff's claims for violations of the Fourteenth Amendment:

   a. Defendant's motion for summary judgment on Plaintiff's claims that the City violated procedural due process is denied.

   b. Defendant's motion for summary judgment on Plaintiff's claims that the City violated the Equal Protection Clause is granted.

   c. Defendant's motion for summary judgment on Plaintiff's claims that the City violated substantive due process is granted.

7. Defendant's motion for summary judgment on Plaintiff's claim that the City violated the Fifth Amendment of the United States Constitution is denied.

8 Defendant's motion for summary judgment on Plaintiff's claim that the City violated the Fourth Amendment of the United States Constitution is denied.

9. Defendant's motion for summary judgment on Plaintiff's three claims based in state law (*i.e.*, "injury by motor vehicle," trespass to real property, and intrusion on seclusion) is granted.

The parties are to file their motions for summary judgment regarding the remaining issues and/or the issues denied without prejudice in accordance with the Amended Scheduling Order (Docket Entry No. 95).

The following issues require further briefing or remain:

1. Plaintiff's claim that the City violated the Texas Local Government Code § 214.001.

25

2.      Plaintiff's claim that the City violated Article I, Section 17 of the Texas Constitution.

3.      Plaintiff's claim that the City violated the Fourteenth Amendment of the United States Constitution by denying procedural due process to Plaintiff.

4.      Plaintiff's claim that the City violated the Fifth Amendment of the United States Constitution.

5.      Plaintiff's claim that the City violated the Fourth Amendment of the United States Constitution.

It is so ORDERED.

SIGNED this 25th day of March, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE