**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PAUL CHANCE KINNISON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-08-CV-421-XR |
| | § | |
| CITY OF SAN ANTONIO, J. BARRY | § | |
| ARCHER, Individually and in his official | § | |
| capacity as Development Services Director | § | |
| for the City of San Antonio, MIKE | § | |
| CONSTANTINO, Individually and in his | § | |
| official capacity as Development Services | § | |
| Manager for the City of San Antonio, and | § | |
| REYES HERNANDEZ, Individually and in | § | |
| his official capacity as Supervisor of the | § | |
| Dangerous Premises Department of the City | § | |
| of San Antonio's Department of Code | § | |
| Compliance, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On the date, the Court considered Defendants J. Barry Archer, Mike Constantino, and Reyes

Hernandez's Second Motion for Summary Judgment (Docket No. 99), Plaintiff's Motion for

Summary Judgment (Docket No. 100), Defendant City of San Antonio's Second Motion for

Summary Judgment (Docket No. 101), the Defendants' objections and motion to exclude the

affidavit attached to Plaintiff's response (Docket No. 107), and the responses and replies thereto.

The individual Defendants' motion is GRANTED, the Defendant City's motion is GRANTED IN

PART AND DENIED IN PART, and the Plaintiff's motion is GRANTED IN PART AND DENIED

IN PART.  Defendants' motion to exclude the testimony of Paul Kinnison, Jr. is GRANTED.

## Background

The facts of this case were provided in the Court's previous orders on summary judgment.

In its Order on Summary Judgment issued on March 8, 2010, the Court wrote:

> This case involves the demolition of two structures at 332 E. Myrtle Street, in San Antonio, [Bexar County,] Texas. Plaintiff Paul Chance Kinnison purchased the property from Deepak Land Trust [on April 9, 2008] and, in his pleading, states he intended to renovate and live in the property.[1]
>
> On or about April 8, 2008, Alice Guajardo, a Code Enforcement Officer for Defendant City of San Antonio, inspected the house at 332 E. Myrtle Street. The inspection was in response to a telephone call to the City's non-emergency customer service system regarding a dangerous premises. Guajardo found the house on the property to be unsecured and vacant, and she declare[d] that the house posed a danger to the public. She state[d] that there was fire damage and deterioration to the home's foundation, exterior walls, and roof system, and the foundation was separating from beams, floor joists, rotting sills, and leaning piers. Guajardo prepared the necessary documents to have the property demolished.[2] She contacted Richard Brownlee, trustee of the Deepak Land Trust, which was listed as the owner of record. Guajardo claims that Brownlee told her that the property had been sold, but he could not identify the [new] owner.
>
> At Guajardo's request, City Senior Building Inspector Ramiro Carrillo inspected the property on April 10, 2008. Carrillo found the foundation, walls, and roof to be in poor structural condition, and he

---

[1][]In their pleadings, the parties state that the house at 332 E. Myrtle Street, San Antonio, Texas, was deemed previously an imminent danger but not demolished. No summary judgment evidence is available regarding the facts and circumstances regarding this issue or whether the Deepak Land Trust or another individual was the owner of the property at that time.

[2]Guajardo obtained ownership records from the Bexar County Appraisal District, records from the City of San Antonio tax system, prepared photographs, prepared an Investigator Report Form and Nuisance Definitions Report, prepared a geographic information system mapping report, procured an environmental survey form, obtained an affidavit from the City's Director of Development Services, notified the City of San Antonio Historic Preservation Office, notified City of San Antonio Council Member Mary Alice Cicneros, searched city records to determine if any work permits had been requested or approved for the property, procured an affidavit from the City's Director of Housing & Neighborhood Services, prepared forms for the City public service department to disconnect utility services, and prepared the demolition work order.

deemed the house and its accessory structure an imminent threat to life, safety, and/or property. Carrillo recommended that the house be demolished to Defendant J. Barry Archer, Acting Director of the Development Services Department. Archer reviewed the materials submitted by Carrillo and accepted his recommendation on April 10, 2008.

Carrillo then recommended that both the house and accessory structure be scheduled for emergency demolition to Roderick J. Sanchez, Director of the City's Development Services Department. Sanchez reviewed the materials submitted by Carrillo and accepted his recommendation. On April 15, 2008, Sanchez declared:

> Due to the extensive damage and its unsafe structural condition, it was my determination that the main and accessory structures located at 332 E. Myrtle presented a clear and imminent threat to life, safety, and/or property necessitating an immediate demolition. In my judgment, no other abatement procedure was reasonably available under these circumstances.

On April 16, 2008, Director of Housing and Neighborhood Services David D. Garza concurred [with] the assessment that the structures at 332 E. Myrtle presented a clear and imminent threat to life, safety, and/or property necessitating an immediate demolition.

On April 17, 2008, the City demolished the house and accessory structure. Kinnison received a telephone call from Mr. Cuellar of Cuellar Foundation, which had been contracted by Kinnison to repair the foundation of the house and had begun repairing the property on April 16, 2008. While Mr. Cuellar was present, the City's demolition crew arrived and demolished the house and accessory structure. City records do not indicate a permit or application for foundation work was obtained for the property. On April 28, 2008, the City sent post-demolition written notice to the Deepak Land Trust, which was listed as the owner of record for the property.

Kinnison claims the demolition of the property violated the procedures established in Article VIII, Section 6-175 of the City of San Antonio Code of Ordinances ("the ordinance").[3] (The City

---

[3]The version of the ordinance in effect at the time the City demolished the property read:
Sec. 6-175. Emergency cases; summary abatement by city officials.
(a) In cases where it appears to the code compliance officer, the fire chief, or the director of development services, that due to one or more structural conditions threatening the structural integrity of a building or structure, there is a clear and imminent danger to the life, safety or

amended the ordinance in October 2008.) Kinnison filed suit against the City of San Antonio; J. Barry Archer, individually and in his official capacity as Acting Director of the Development Services Department; Michael Constantino, individually and in his official capacity as Development Services Manager in the Planning and Development Services Department; and Reyes Hernandez, individually and in his official capacity as Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Services Department.  Kinnison asserted multiple causes of action, including violation of Section 6-175 of the City's Code of Ordinances; violation of Chapter 214 of the Texas Local Government Code; violations of Article I, Sections 17 and 19 of the Texas Constitution; violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; "injury by motor vehicle of equipment"; trespass to real property; intrusion on seclusion; and a request for declaratory relief.

----

property of any person unless a dangerous building or structure, as defined in this article, is immediately repaired or demolished, especially in cases where such a very dangerous building or structure, is located within one thousand (1,000) feet of a public or private elementary school, middle school, high school, or a state recognized day care center, any or of those officials (the official) shall execute the immediate vacation and or repair or demolition of such very dangerous building or structure, regardless of the date of its construction.  Such summary action shall require concurrence from at least one other of the aforesaid officials.  In the case of summary demolition, concurrence of the director of development services shall be required.  Such concurrence shall include a determination that under the circumstances no other abatement procedure is reasonably available except demolition.   The official taking action shall thereafter immediately provide notice to the DSDB, of the accomplished abatement; and to the owner and lienholders/mortgagees of said dangerous building.  All costs, including asbestos and special or hazardous waste removal/disposal, of such emergency summary repair, vacation, or demolition of such dangerous building shall be collected in the manner provided by law.

(b) The foregoing emergency abatement action shall be executed no later than seventy two (72) weekday hours, exclusive of weekends and holidays, after the official views the subject building or structure.
. . . .

SAN ANTONIO, TEX., CODE § 6-175 (2002).

**Procedural History**

Kinnison filed suit against the City, Archer, Constantino, and Hernandez in the 73rd Judicial District Court of Bexar County, Texas.[4]  Defendants timely removed this case.[5]  The live pleading is Plaintiff's First Amended Complaint.[6]

The Court dismissed certain claims against the individual defendants[7] and dismissed certain claims against the City after considering the Court's jurisdiction in this matter.[8]  The Court granted the individual Defendants' motion for summary judgment and granted in part and denied in part the City's motion to dismiss state claims against them.[9]  Defendant City of San Antonio's motion for

---

[4]Pl.'s Original Pet., May 16, 2008 (attached as exhibit to Docket No. 1).

[5]Notice of Removal, May 22, 2008 (Docket No. 1).

[6]Pl.'s 1st Am. Compl., Oct. 15, 2008 (Docket No. 28).

[7]The Court dismissed claims against the individual Defendants in their official capacities as redundant to Kinnison's claims against the City, and the Court dismissed Kinnison's Fourth Amendment and substantive due process claims against the individual defendants.  Order on Mot. to Dismiss, Mar. 5, 2009 (Docket No. 53).

[8]The Court found that Kinnison's Fifth Amendment claims were unripe, the as-applied substantive due process challenge as vague was ripe, the as-applied Equal Protection claim under the Fourteenth Amendment was ripe, the as-applied Fourth Amendment claims were ripe, the procedural due process and substantive due process claims were subsumed under the Fifth Amendment and Fourth Amendment claims and/or required further factual development to become ripe, and the facial procedural due process claim was ripe.  Plaintiff's facial Fourth Amendment claim based on the lack of a warrant was foreclosed by the Fifth Circuit's decision in *Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001) (en banc).  The Court exercised supplemental jurisdiction over Plaintiff's state statutory and state constitutional claims and ruled that Kinnison could pursue his unripe claims in the alternative to and contingent upon resolution of his state inverse condemnation claim.  Order, Mar. 2, 2009 (Docket No. 52).

[9]The Court granted summary judgment in favor of the individual Defendants on Plaintiff's federal constitutional claims, and dismissed Plaintiff's state tort claims pursuant to Section 101.106(e) of the Texas Civil Practice & Remedies Code.  Order on Mot. for Summary J. & Mot. to Dismiss, Mar. 8, 2010 (Docket No. 94).

summary judgment was granted in part and denied in part.[10]  The parties were ordered to provide the Court with cross motions for summary judgment as to the remaining claims.[11]

The individual Defendants, Defendant City of San Antonio, and Plaintiff moved for summary judgment on June 7, 2010, on the remaining claims in this case.[12]  The parties have filed their responses, which include Defendants' objections to Plaintiff's exhibits and motion to exclude an affidavit attached to one of Plaintiff's responses.[13]

## Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

---

[10]The Court granted summary judgment in favor of the Defendant City of San Antonio on the following claims: declaratory relief pursuant to the Texas Declaratory Judgment Act; violation of Section 6-175 of the City of San Antonio's Code of Ordinances; violations of Sections 214.0011 and 214.00111 of the Texas Local Government Code; violation of Article I, Section 19 of the Texas Constitution; violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; violation of substantive due process under to the Fourteenth Amendment of the United States Constitution; and state law tort claims (*i.e.*, "injury by motor vehicle," trespass to real property, and intrusion on seclusion).  Order on Mot. for Summ. J., Mar. 26, 2010 (Docket No. 96). The Court denied the motion as to the following claims:  violation of Section 214.001 of the Texas Local Government Code; violation of Article I, Section 17 of the Texas Constitution; violation of procedural due process pursuant to the Fourteenth Amendment of the United States Constitution; and violations of the Fourth and Fifth Amendments of the United States Constitution.  *Id.*

[11]Am. Scheduling Order, Mar. 9, 2010 (Docket No. 95).

[12]Individual Defs.' 2d Mot. for Summ. J., Jun. 7, 2010 (Docket No. 99); Pl.'s Mot. for Summ. J., Jun. 7, 2010 (Docket No. 100); Def. City's 2d Mot. for Summ. J., Jun. 9, 2010 (Docket No. 101).

[13]Def. City's Resp. to Pl.'s Mot. for Summ. J. & Objections to Pl.'s Summ. J. Evid, Jun. 18, 2010 (Docket No. 102); Individual Defs.' Resp. to Pl.'s Mot. for Summ. J. & Objections to Pl.'s Summ. J. Exhibits, Jun. 18, 2010 (Docket No. 104); Pl.'s Resp. to Defs.' Mots. for Summ. J., Jun. 21, 2010 (Docket No. 105); Individual Defs.' Reply to Pl.'s Resp. & Mot. to Exclude Aff. of Paul Kinnison Jr., Jun. 25, 2010 (Docket No. 107); Def. City's Reply to Pl.'s Resp., Jun. 25, 2010 (Docket No. 108); Pl.'s Sur-[Reply] to Individual Defs.' Reply & [Resp.] to Mot. to Exclude Aff. of Paul Kinnison, Jr., Jun. 25, 2010 (Docket No. 109).

is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  "[I]f the movant bears the burden of proof on an issue . . , he must establish beyond peradventure *all* of the essential elements of the . . . [claim] to warrant judgment in his favor." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (first ellipses and bracket added).

Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  To avoid summary judgment, the nonmoving party must adduce admissible evidence that creates a fact issue concerning the existence of every essential component of that party's case and unsubstantiated assertions of actual dispute will not suffice.  *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992).  The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings.  *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).  The Court reviews all facts in the light most favorable to the nonmoving party.  *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

### Analysis

Kinnison's remaining claims against the individual Defendants are: (1) violation of the city ordinance; (2) violation of Chapter 214 of the Texas Local Government Code; and (3) violations of the Texas Constitution.  Kinnison's remaining claims against the City are: (1) violation of Section

214.001 of the Texas Local Government Code; (2) violation of Article I, Section 17 of the Texas Constitution; (3) violation of procedural due process pursuant to the Fourteenth Amendment of the United States Constitution; (4) violation of the Fourth Amendment of the United States Constitution, and (5) violation of the Takings Clause of the Fifth Amendment of the United States Constitution. The Court will evaluate Plaintiff's claims against the individual Defendants and then proceed to the remaining claims against the City.[14]

**A. Claims Against the Individual Defendants**

The City of San Antonio previously moved to dismiss the individual Defendants from this suit pursuant to Section 101.106(e) of the Texas Civil Practice & Remedies Code.[15]  The Court granted the motion, but in doing so, declined to apply Section 101.106(e) to claims based in statute or the Texas Constitution.[16]  The individual Defendants move for summary judgment on Kinnison's remaining claims against them, which are based in statute or the Texas Constitution.

*1.     The City Ordinance does not provide a private right of action for monetary damages against the individual Defendants.*

In his complaint, Kinnison alleges that the Defendants violated Section 6-175 of the City of San Antonio Code of Ordinances by (1) failing to provide the property owner notice of the

---

[14]The Court assumes that Plaintiff's single motion for summary judgment applies to all the Defendants in this case.  The Court construes Plaintiff's arguments in a light favorable to Kinnison given the numerous unsupported declarations of law and commentary included in the brief.  Plaintiff provided a two and one-half page response to both the City's motion and the individual Defendants' motion that does not address the individual Defendants' arguments.

[15]Under Section 101.106(e) of the Texas Civil Practice & Remedies Code: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e) (Vernon 2005).

[16]Order on Mot. for Summ. J. & Mot. to Dismiss at 12–14.

8

accomplished abatement, (2) failing to notify the City's Dangerous Structure Determination Board of the abatement, and (3) "applying the ordinance in an ad hoc or capricious basis" by previously designating and then de-designating the house as an imminent danger.[17]  However, Kinnison moves for summary judgment on three alleged violations that he has not pled:  (1) the subject property was demolished more than seventy-two weekday hours after officials viewed the building or structure, (2) officials failed to view the structure as required by the statute, and (3) officials failed to conclude that no other abatement procedure was reasonably available.[18]  In any case, contrary to this Court's previous determination that a cause of action does not exist pursuant to Section 6-175 of the San Antonio Code of Ordinances, Kinnison states that a private right of action exists.[19]  The individual Defendants argue that the ordinance does not provide a private cause of action and that Plaintiff therefore fails to state a claim as a matter of law.[20]

Under Texas law, courts construe municipal ordinances in the same manner that they construe statutes.  *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002).  Texas courts "apply a 'strict rule of construction' to statutory enforcement schemes and

---

[17]Pl.'s 1st Am. Compl. at 6–8.

[18]Pl.'s Mot. at 10–11.  Plaintiff's motion states that he has "asked to amend his [complaint] simultaneously with the filing of this response after learning of all the violations of the [ordinance] . . . ." *Id.* at 10 n.13.  No such motion is pending.  After Plaintiff's repeated attempts to amend his complaint, the Court granted Kinnison leave to amend, but Kinnison never filed his Second Amended Complaint.  *See* Order, Dec. 21, 2009 (Docket No. 84).  Six months have passed since the Court has issued that order, and the Court has since issued orders based on the First Amended Complaint.  In any case, this Order would dispose of Plaintiff's proposed amendments.

[19]Pl.'s Mot. at 8–9.  The Court stated that no private right of action existed under the City's ordinance.  Order on Mot. for Summ. J. at 11.

[20]Individual Defs.' Mot. at 8–9.

imply causes of action only when the drafters' intent is clearly expressed from the language as written." *Witkowski v. Brian, Fooshee and Yonge Props.*, 181 S.W.3d 824, 831 (Tex. App.—Austin 2005, no pet.) (citing *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004)). Plaintiff admits and a review of the ordinance shows that the city ordinance did not provide for an express private right of action. Moreover, the language of the ordinance did not indicate any intent to create a private cause of action. The language merely authorized officials to conduct a summary abatement procedure in an emergency and outlines the procedures necessary to execute the abatement. The ordinance does not reference the property owner nor does it provide for a penalty for failure to adhere to the ordinance. Kinnison argues, without providing the Court any citation, that the City's Dangerous Structures Determination Board "allows for some judicial review of the [Dangerous Structures Determination Board's] decision making," which he argues would allow the Court to infer that judicial redress is justified. Plaintiff provides no support for the argument that such an inference is justified absent any clear intent to the contrary. *See Brown*, 156 S.W.3d at 563. Kinnison's unsupported claims that "great harm" justifies a private cause of action is likewise unsupported. "The fact that a person has suffered harm from the violation of a statute does not automatically give rise to a private cause of action in favor of that person." *Id.* (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688, 99 S. Ct. 1946, 60 L. Ed.2d 560 (1979)).

2.   *Chapter 214 of the Texas Local Government Code does not provide a private right of action for monetary damages against the individual Defendants.*

Kinnison asserted a myriad of claims under Chapter 214 of the Texas Local Government Code, claiming that (1) the individual Defendants did not follow the prescribed measures to locate

10

and notify him in violation of Section 214.001 of the Texas Local Government Code,[21] (2) they failed to follow additional standards for notification under Section 214.0011,[22] (3) they failed to notify the San Antonio Historic Review Board in violation of Section 214.00111,[23] and (4) they violated the provisions for emergency demolition under Section 214.002.[24]  Specifically, Kinnison alleged that Archer and Constantino orchestrated the demolition of the property and Reyes had "actual, hands-on, operational control" over the demolition.[25]  The individual Defendants move for summary judgment on Plaintiff's claims, stating that Chapter 214 does not provide a private cause of action for damages against them.[26]  They also note that in the Court's order on the City's first motion for summary judgment, the Court determined that Section 214.0011 did not apply to this case and the City complied with the requirements of Section 214.00111.[27]  Plaintiff moves for summary judgment on Chapter 214, but directs his arguments against the City and does not address the individual Defendants' liability.[28]

---

[21]This section of the statute involves a municipality's authority to regulate substandard buildings and requirements for city ordinances that regulate substandard buildings.  *See* TEX. LOCAL GOV'T CODE ANN. § 214.001 (Vernon Supp. 2009).

[22]This section of the statute outlines minimum standards for the use and occupancy of buildings in the municipality.  *Id.* § 214.0011.

[23]This section of the statute states that a historic review board may evaluate a notice to abate a property in a historic district.  *Id.* § 214.00111.

[24]This section of the statute involves the repair, removal, or demolition of a structure "likely to endanger persons or property."  *Id.* § 214.002.

[25]Pl.'s 1st Am. Compl. at 8.

[26]Individual Defs.' Mot. at 8–9.

[27]*Id.* at 9 n.5.

[28]Pl.'s Mot. at 11–13.

The individual Defendants are correct that Section 214.0011 is inapplicable to this case,[29] and no violation exists as to section 214.00111.[30]  Similar to the City's ordinance, the statute does not create a private cause of action for monetary damages.[31]  *See Witkowski*, 181 S.W.3d at 831 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–72, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)) (presuming that statute's silence on a right to enforcement means the legislature did not intend to

---

[29]In the Court's order on the City's first motion for summary judgment, the Court stated:
> Section 214.0011 of the Texas Local Government Code authorizes a municipality to establish "minimum standards for the use and occupancy of buildings in the municipality." TEX. LOCAL GOV'T CODE § 214.0011(a) (Vernon 2008).  The remainder of the statute pertains to a municipality's authority to secure a building that violates the minimum standards. *See id.* § 214.001(b)–(f).  None of the facts alleged nor the evidence before the Court involves the City securing or attempting to secure the structures on Kinnison's property.

Order on Mot. for Summ. J. at 13.

[30]In the Court's order on the City's first motion for summary judgment, the Court stated:
> The City does not dispute that the property was within a historic district, and it provides evidence that it notified the City's historic preservation board, in this case the City of San Antonio Historic Preservation Office, of the intended demolition in compliance with the statute.  Furthermore, the statute states that before notice is sent or conducted under section 214.001, "the historic preservation board of a municipality *may* review a building . . . ." [TEX. LOCAL GOV'T CODE] § 214.00111(c).  The historic review board was within its discretion to decline a review of Kinnison's property.  Therefore, Kinnison cannot claim a violation of section 214.00111.

*Id.* at 13–14.

[31]The section of the statute that contemplates judicial review of a municipality's compliance with section 214.001 does not authorize monetary damages.  TEX. LOCAL GOV'T CODE § 214.012 (Vernon 2008).  In fact, the statute goes as far as to explicitly bar the recovery of costs from a municipality.  *Id.* § 214.012(g) ("Costs may not be allowed against the municipality.").  The statute evinces an intent to bar monetary damages.  "When a statute explicitly provides certain rights of enforcement, but is silent as to the right sought to be enforced, [the Court] may presume that the Legislature intended for that right to not be included." *Witkowski*, 181 S.W.3d at 831.  Here, the statute only contemplates judicial review of the municipality's action, but is silent as to monetary damages.

12

create a private right of enforcement).  Moreover, the statute refers to municipal procedures and not

the liability of municipal employees.  Therefore, Plaintiff cannot pursue his claims for monetary

damages based on violations of Chapter 214 of the Texas Local Government Code.

3.    *Article I, Section 19 of the Texas Constitution does not create a private cause of action.*

The individual Defendants move for summary judgment on Kinnison's claims that they

violated Article I, Section 19 of the Texas Constitution.[32]  Kinnison neither moves for summary

judgment on his claim nor does he respond to the individual Defendants' motion on this issue.  In

its order on the City's first motion for summary judgment, the Court stated: "Texas courts have held

that the 'due course of law' clause of section 19 provides no private cause of action for damages."

Order on Mot. for Summ. J., at 15 (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148–49

(Tex. 1995); *Patel v. City of Everman*, 179 S.W.3d 1, 14 (Tex. App.—Tyler 2004, pet. denied)).

Kinnison cannot seek monetary damages pursuant to Article I, Section 19 of the Texas Constitution

against the individual Defendants.

4.    *Kinnison cannot pursue his remaining claims against the individual Defendants, including an alleged violation of Article I, Section 17 of the Texas Constitution.*

Kinnison alleges that the individual Defendants violated Article I, Section 17 of the Texas

Constitution, which provides that "[n]o person's property shall be taken, damaged or destroyed for

or applied to public use without adequate compensation being made . . . ."  TEX. CONST. art. I, § 17.

The individual Defendants move for summary judgment, arguing that official immunity bars

violations of the Texas Constitution asserted against individuals and that Kinnison has no evidence

---

[32]Individual Defs.' Mot. at 9.  Article I, Section 19 reads: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land."  TEX. CONST. art. I., § 19.

13

to assert a claim against them.[33]  Plaintiff fails to move for summary judgment on his claim that the individual Defendants violated Article I, Section 17 of the Texas Constitution since his arguments are directed to the City, his brief response does not address the individual Defendants' affirmative defense of official immunity, nor does it present any evidence to create a material issue of fact that J. Barry Archer, Mike Constantino, or Reyes Hernandez engaged in any action to warrant individual liability.[34]

Official immunity is an affirmative defense.  *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 423 (Tex. 2004).  "Texas law provides that a governmental employee is entitled to official immunity for '(1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith.'"  *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 437–38 (5th Cir. 2008) (quoting *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002)).

Reyes Hernandez served as the Supervisor for the Dangerous Premises Section of the City of San Antonio Housing & Neighborhood Services Department.[35]  He supervised Dangerous Premises Investigator Alice Guajardo who conducted the initial investigation of Kinnison's property.[36]  Hernandez received Guajardo's report form, structural condition report, photographs, code compliance log, notice to the historic preservation officer, and Bexar County and San Antonio

---

[33]Individual Defs.' Mot. at 10–16.

[34]*See* Pl.'s Mot. at 13–14.

[35]Aff. of Reyes Hernandez 2 (Jun. 4, 2010) (Individual Defs.' Ex. 3).

[36]*Id.* at 2; Aff. of Alice Guajardo (Sept. 29, 2009) (Individual Defs.' Ex. 5).

city tax information.[37]  Hernandez states that he decided the file was complete and he presented it

to the Director of the City's Development Services Department for his consideration.  Hernandez

used his judgment in evaluating the report and pictures of structural damage to determine that the

file could be transferred to the next department.[38]  Hernandez states that he did not have operational

control nor provide any opinion or recommendation regarding the demolition.[39]  Hernandez describes

his job duties; his testimony establishes that he exercised his discretion in compliance with those

duties and that he fulfilled his duties in good faith.[40]  Hernandez has therefore established that he is

entitled to official immunity.  Kinnison provides no evidence in his motion for summary judgment

nor does he provide evidence in his response to create a material issue of fact.  Consequently,

Kinnison cannot pursue his claims against Reyes Hernandez.

In a previous order, the Court stated that the demolition of the Kinnison's property was not

based on J. Barry Archer's approval and exhibits demonstrate that he was not involved in the

demolition.[41]  In the current motion, J. Barry Archer attests that Roderick J. Sanchez, the City's

Director of the Development Services Department, authorized the demolition of the structures at 332

E. Myrtle Street.[42]  Archer attests that he had no direct or indirect participation in the ultimate

---

[37]Hernandez Aff. at 2.

[38]*Id.*

[39]*Id.* at 3.

[40]*See id.* at 2–3.

[41]Order on Mot. for Summ. J. & Mot. to Dismiss at 9–10.

[42]Aff. of J. Barry Archer 3–4 (Jun. 4, 2010) (Individual Defs.' Ex. 2).

decision to demolish the structures.[43]  Kinnison provides no affidavit or exhibits to present an issue of material fact on this matter.

Likewise, Plaintiff fails to present any evidence to create a material issue of fact on Mike Constantino's personal liability.  While Constantino was involved with a structural analysis report that cited deficiencies in the structures at 332 East Myrtle Street in 2006, he did not participate in the emergency demolition conducted in 2008 nor did he supervise the inspectors.[44]  Kinnison again provides no affidavit or exhibits to present an issue of material fact on this matter.

5.    *Summary of Claims Against Individual Defendants.*

Kinnison has failed to establish any of his claims on summary judgment against Defendants J. Barry Archer, Mike Constantino, or Reyes Hernandez, and he has not presented any evidence that would create an issue of material fact regarding their individual liability.  Consequently, the Court grants summary judgment in favor of the individual Defendants.

**B.  Claims Against the City**

Plaintiff's remaining claims in this case against the City are:  (1) violation of Section 214.001 of the Texas Local Government Code; (2) violation of Article I, Section 17 of the Texas Constitution; (3) violation of procedural due process pursuant to the Fourteenth Amendment of the United States Constitution; (4) violation of the Fourth Amendment of the United States Constitution, and (5) violation of the Takings Clause of the Fifth Amendment of the United States Constitution.

1.    *Plaintiff moves for summary judgment on his claims that the City violated its ordinance even though this claim is no longer pending.*

Plaintiff moves for summary judgment on his claim that the City violated Section 6-175 of

---

[43]*Id.*

[44]Aff. of Michael Constantino 2–3 (Jun. 7, 2010) (Individual Defs.' Ex. 1).

the City of San Antonio Code of Ordinances.[45]   The City correctly points out that "[t]he Court granted the City 's motion for summary judgment as to Plaintiff[']s claims regarding City of San Antonio Ordinance 6-175 and the City's alleged violation of this Ordinance."[46]   The Court granted summary judgment in favor of the City because (1) Kinnison failed to plead any manner in which any failed notice caused damages; (2) Kinnison provided no evidence to establish his claim that the designation, de-designation, and re-designation of the property as an imminent danger was a violation of the ordinance; and (3) the City established that it provided post-abatement notice to the Dangerous Structure Determination Board in accordance with the ordinance.[47]   Moreover, the ordinance does not provide for a private cause of action.[48]   To the extent that Kinnison intends for his motion to serve as a motion for the Court to reconsider its order granting summary judgment in favor of the City on his claim related to the ordinance, the motion is denied for the reasons stated in the previous order and for the additional analysis provided in this order.

2.    *Kinnison cannot pursue a claim for damages based on the City's alleged violation of Section 214.001 of the Texas Local Government Code.*

Section 214.001 permits a municipality to enact ordinances regarding buildings that are "dilapidated, substandard, or unfit for human habitation."[49]   Section 214.002 permits a municipality

---

[45]Pl.'s Mot. at 8–11.

[46]Def. City's Resp. at 3.

[47]Order on Mot. for Summ. J. at 10–12.

[48]*See supra* Part A.1 (regarding a private cause of action under the City's ordinance).

[49]The statute reads in part:
(a)      A municipality may, by ordinance, require the vacation, relocation of occupants, securing, repair, removal, or demolition of a building that is:
    (1)      dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare;

17

to "repair, remove, or demolish" a structure  if the municipality finds that the structure "is likely to endanger persons or property and establishes standards for an ordinance, hearings, and notice."[50]

---

> (2)     regardless of its structural condition, unoccupied by its owners, lessees, or other invitees and is unsecured from unauthorized entry to the extent that it could be entered or used by vagrants or other uninvited persons as a place of harborage or could be entered or used by children;  or
>
> (3)     boarded up, fenced, or otherwise secured in any manner if:
>
> > (A)     the building constitutes a danger to the public even though secured from entry;  or
> >
> > (B)     the means used to secure the building are inadequate to prevent unauthorized entry or use of the building in the manner described by Subdivision (2).
>
> (b)  The ordinance must:
>
> > (1)     establish minimum standards for the continued use and occupancy of all buildings regardless of the date of their construction;
> >
> > (2)     provide for giving proper notice to the owner of a building;  and
> >
> > (3)     provide for a public hearing to determine whether a building complies with the standards set out in the ordinance.

TEX. LOCAL GOV'T CODE ANN. § 214.001.

[50]The statute reads:

> (a)     If the governing body of a municipality finds that a building, bulkhead or other method of shoreline protection, fence, shed, awning, or other structure, or part of a structure, is likely to endanger persons or property, the governing body may:
>
> > (1)     order the owner of the structure, the owner's agent, or the owner or occupant of the property on which the structure is located to repair, remove, or demolish the structure, or the part of the structure, within a specified time;  or
> >
> > (2)     repair, remove, or demolish the structure, or the part of the structure, at the expense of the municipality, on behalf of the owner of the structure or the owner of the property on which the structure is located, and assess the repair, removal, or demolition expenses on the property on which the structure was located.
>
> (b)     The governing body shall provide by ordinance for:
>
> > (1)     the assessment of repair, removal, or demolition expenses incurred under Subsection (a)(2);
> >
> > (2) a method of giving notice of the assessment; and
> >
> > (3) a method of recovering the expenses.
>
> (c)     The governing body may punish by a fine, confinement in jail, or both a person who does not comply with an order issued under Subsection (a)(1).

*Id.* § 214.002.

Kinnison moves for summary judgment on his claim that the City violated Section 214.001 of the Texas Local Government Code.[51]   The City moves for summary judgment, stating that Section 214.001 is inapplicable to this case.[52]   The City argues that the authority pursuant to which it demolished the structures on Kinnison's property is Section 214.002, which authorizes a municipality to demolish a structure upon the finding that the structure "is likely to endanger persons or property" and to provide an ordinance regarding the assessment of expenses.[53]

Kinnison fails to provide the Court with any reason why Section 214.001 applies and Section 214.002 does not apply; he merely lists the ways in which the City violated the provisions of Section 214.001.  None of Kinnison's chronology is relevant if Section 214.001 is inapplicable.  The City states that the requirements of Section 214.001 do not apply because it made the determination that the structure posed a danger to persons or property.  The City provides evidence that its inspectors considered the structures an immediate danger, warranting their immediate demolition.  The City relies heavily on the argument that "prior notice is not constitutionally required when there are exigent circumstances that do not allow a municipality to provide notice or hearing prior to the demolition of a property" based on the "exercise of their police powers."[54]  *See, e.g., Keller v. City of Corpus Christi*, 50 Tex. 614 (1879) ("[I]n cases of imminent and urgent public necessity, any individual or municipal officer may raze or demolish houses and other combustible structures in a city to prevent the spreading of an existing conflagration.").

---

[51]Pl.'s Mot. at 12–13.

[52]Def. City's Mot. at 3.

[53]*Id.*

[54]*Id.* at 4–5.

The parties are conflating issues regarding Plaintiff's claim pursuant to Section 214.001. The first issue is: In light of the facts of this case, whether Kinnison may pursue a claim for monetary damages pursuant to Section 214.001 of the Texas Local Government Code. The second issue being raised by the City, but unaddressed by Plaintiff, involves its authority to demolish a structure, as authorized under Section 214.002, without prior notice because of exigent circumstances. Consideration of the second issue requires evaluation of a third issue: whether the findings of the City meet the requirements of a public emergency or presented exigent circumstances to warrant the immediate demolition of the Kinnison property. The second and third issues will be resolved in the subsequent sections.

In this section, the Court focuses on whether Kinnison may pursue a claim pursuant to Section 214.001.[55] Section 214.001 authorizes a municipality to establish an ordinance that requires demolition of a building that is dilapidated, unoccupied, or boarded-up or fenced but constitutes a danger to the public. The statute then outlines minimum standards for the ordinance. Section 214.0012 authorizes judicial review for "[a]ny owner, lienholder, or mortgagee of record of property jointly or severally aggrieved by an order of a municipality *issued under Section 214.001* . . . ." TEX. LOCAL GOV'T CODE ANN. § 214.0012(a) (emphasis added).[56] The provision that authorizes the state courts to review the decision of the municipality contemplates that the municipality rendered a decision under Section 214.001, that is, the municipality held a pre-demolition hearing, provided notice of the hearing to each mortgagee, and issued an order for the owner to repair, remove, or demolish the building. *Id.; see also id.* § 214.001.

---

[55]Kinnison fails to provide any argument as to whether he can pursue a claim for damages based on a violation of the statute.

[56]Kinnison does not discuss whether he is entitled to judicial review under Section 214.012.

It is not enough, however, for the City to declare that it acted pursuant to another statute, in this case Section 214.002, to avoid judicial review under Section 214.0012.  In *Carlson v. City of Houston*, a Texas appellate court held that a city's order for residents to vacate an apartment building pursuant to Section 214.216—a statute with no related authorization for judicial review that authorizes a municipality to enact an ordinance adopting the International Building Code—did not preclude judicial review under Section 214.0012.  *Carlson v. City of Houston*, 309 S.W.3d 579, 587–88 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  The City claimed that "emergency circumstances" necessitated its reliance on Section 214.216, but the court found that the record did not demonstrate that an emergency existed, judicial review did not impede the municipality's ability to issue its order for residents to vacate the property, it would not hamper the city's ability to enforce its building codes, and it would not burden the courts.  *Id.*  Likewise, it is not enough for the City of San Antonio to merely claim that it is acting in an emergency situation to avoid judicial review.

In any case, Kinnison seeks "monetary damages" for the City's violation of the statute.  Here, the statute limits a court to "issue a writ of certiorari directed to the municipality to review the order of the municipality" and to "reverse or affirm, in whole or in part, or . . . modify the [municipality's] decision" under the substantial evidence rule.  TEX. BUS. & COM. CODE ANN. § 214.0012.[57]  The section on judicial review does not authorize, explicitly or by implication, an award of damages.

The Court assumes that Kinnison is arguing that the City should have followed Section 214.001 because the state of his property did not constitute a public emergency that would warrant immediate demolition without pre-demolition notice.  Under this assumption, the statute does not

---

[57]The statute also requires that the owner file a "verified petition."  TEX. BUS. & COM. CODE ANN. § 214.0012(a).  Kinnison did not file a verified petition in state court prior to the removal of this case to federal court.  *See* Pl.'s Original Pet. (attached as exhibit to Docket No. 1).

provide for a private cause of action for monetary damages against the City for failure to follow the procedures or enact an ordinance that meets the requirements of Section 214.001.[58]  This is further supported by the statute's explicit prohibition of awarding costs against the municipality.  *See id.* § 214.0012(g) ("Costs may not be allowed against the municipality.").   Therefore, there is no explicit or clearly implied right to recover monetary damages authorized under the state statute for a municipality's failure to follow Section 214.001 even if it should have enacted an ordinance that contained the provisions outlined in the statute and abided by them.

As a result, the Court grants summary judgment in favor of the City on Plaintiff's claim for monetary relief pursuant to Section 214.001 of the Texas Local Government Code.

3.    *Kinnison fails to provide evidence that the City's actions amounted to a violation of Article I, Section 17 of the Texas Constitution.*

Article I, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ."  TEX. CONST. art. I, § 17; *see also Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980) ("The Constitution itself is the authorization for compensation for the destruction of property . . . .").  Whether a taking or damaging of property has occurred in violation of Article I, Section 17 of the Texas Constitution is a question of law.  *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004).  "It is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken."  *Id.* at 644. A plaintiff must prove that "(1) the government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use."  *Patel v. City of Everman*, S.W.3d 1, 8 (Tex. App.—Tyler 2004, pet. denied).  The term "public use" includes matters of public health and safety.  *City of*

_____

[58]See *supra* Part A.2.

22

*Houston v. Crabb*, 905 S.W.2d 669, 674 (Tex. App.—Houston [14th Dist.] 1995, no writ).[59]  While

compensation is required in situations that meet the aforementioned requirements, compensation is

not required for "loss occasioned by the exercise of the police power."  *State v. Spartan's Indus.*,

*Inc.*, 447 S.W.2d 407, 413 (Tex. 1969).

Here, it is undisputed that Kinnison owned the property.[60]  It is further undisputed that the

City engaged in an intentional act by evaluating Kinnison's property, declaring it in danger of

imminent collapse, and demolishing his property.[61]  The City's acts resulted in damage to Kinnison's

property via the demolition and removal of two structures on the property owned by Plaintiff.[62]  The

City conducted the demolition because "the condition of [the] Property constituted a clear and

imminent threat to life, safety, and/or property . . . ."[63]

The City, however, defends that its actions are justified by its police power to preserve public

safety.  Once the Plaintiff has established that a governmental entity intentionally damaged his

property because of a "real or supposed public emergency, the government entity may then defend

its actions by proof of a great public necessity."  *Patel*, S.W.3d at 11.  A municipality seeking to

---

[59]Kinnison copied the legal standard verbatim from the Court's previous order and presents it in his motion for summary judgment with little to no additional analysis.  The Court is therefore considering all the evidence provided in both parties' briefs to determine whether Kinnison establishes his claim.

[60]Kinnison does not establish that he owns the property nor does he provide the Court with a copy of the deed as an exhibit.  Here, the City admits that Kinnison purchased the property on April 9, 2008.  Def. City's Mot. at 1 (citing Dep. of Paul Chance Kinnison 29:25–30:2 (Apr. 14, 2009)).  The Court, therefore, does not consider this element to be in dispute.

[61]*See* Def. City's Ex. 1.

[62]*See id.*

[63]*Id.*

23

defend a claim under Article I, Section 17 must show that the property was a nuisance on the day it was demolished. *See id.*; *Crabb*, 905 S.W.2d at 674; *see also City of Dallas v. Stewart*, No. 05-07-1244-CV, 2008 WL 5177168, at *2 (Tex. App.—Dallas Dec. 11, 2008, pet. granted). A nuisance exists when a building "creates a hazard to health, safety, comfort or welfare." *LJD Props., Inc. v. City of Greenville*, 753 S.W.2d 204, 207 (Tex. App.—Dallas, writ denied).

Here, the only admissible evidence before the Court establishes that the structures posed a nuisance. The City's inspectors and officials state in affidavits that the structures posed an imminent danger to property and persons. Photographs and checklists chronicle the multiple deficiencies with the property. The city inspectors evaluated Kinnison's property on April 8 and 10, 2008. The City's officials signed their affidavits declaring the property an imminent danger on April 15, 2008, and April 16, 2008. The City demolished the structures on April 17, 2008.

Previously, the Court noted that Kinnison testified that work had begun on the foundation of the property the day before the demolition. The Court interpreted this reference to question whether the City could show that the structures on the property posed a nuisance on the day the City demolished them. The City argues that in spite of this, the only admissible evidence establishes that the structures were a nuisance when inspected, and by extension, on the day they were demolished. While there is a reference to some work being done on the property the day before and the day of the demolition, there is no affidavit, testimony, or evidence that this work resulted in the structures no longer being a nuisance.

The City is correct. Plaintiff presents no evidence to counter the City's evidence that the structures constituted a nuisance. No affidavit or testimony discusses how Plaintiff remediated the property so that it no longer constituted a nuisance on the day the City demolished th structures.

While the Court has a reference to an individual working on the property, Plaintiff has failed to chronicle the work conducted or whether or not this work raised the structures to a standard that they no longer constituted a nuisance on the day the City demolished them.

In light of the standards for summary judgment, the requirements for the City to defend its demolition of the structures under Texas law, and Kinnison's failure to produce any evidence to create a material issue of fact to the contrary, Kinnison is not entitled to compensation for the City's demolition of his property because the City of San Antonio demolished structures that constituted a nuisance in accordance with its police powers.

4.    *Kinnison's Fifth Amendment Takings Claim fails.*

Now that the Court has ruled that Kinnison's claim has failed under Article I, Section 17 of the Texas Constitution, his Fifth Amendment takings claim is now ripe.  In its analysis of jurisdiction on this matter, the Court stated:

> The Fifth Circuit's language in *Samaad* [*v. City of Dallas*, 940 F.2d 925 (5th Cir. 1992),] that a plaintiff's assertion of a state-law inverse condemnation claim cannot ripen a federal takings claim brought simultaneously with the state-law claim should be limited to scenarios in which there is no basis for the federal court to exercise jurisdiction over the state-law takings claim.  Thus, dismissal of the federal takings claim would be required only when there is no basis for federal court jurisdiction over the state-law takings claim, which is not the case here.  Similarly, remand of the unripe federal claims would be appropriate if the state-law takings claim were remanded to state court, as occurred in *VRC* [*L.L.C. v. City of Dallas*, 391 F. Supp. 2d 437 (N.D. Tex. 2005)].  In this case, the Court concludes that it can and should retain the unripe federal takings claim.

Order at 19–20 n.14.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just

compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536, 125 S. Ct. 2074, 161 L.Ed.2d

876 (2005). Compensation is not required if the property constituted a nuisance. *Lucas v. S.C.*

*Coastal Council*, 505 U.S. 1003, 1029, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *see also Vulcan*

*Materials Co. v. City of Tehuacana*, 369 F.3d 882, 892 (5th Cir. 2004) ("Thus, under federal law,

even if the current value of the claimant's property has been destroyed, the claimant cannot recover

if the 'background principles of the State's law of property and nuisance' would have prohibited that

activity as a nuisance (the 'nuisance exception')." (quoting *Lucas*, 505 U.S. at 1029)).

As previously noted, the only admissible evidence before the Court establishes that

Kinnison's property constituted a nuisance that the government could abate by virtue of its police

powers. *See supra* Part B.3. Kinnison is therefore unable to recover just compensation for the value

of the demolished structures because it constituted a nuisance and it was within the authority of the

City to abate the nuisance.

5.    *The evidence shows that the City violated Kinnison's right to Procedural Due Process.*

The Fourteenth Amendment prohibits a state from depriving a person "of life, liberty, or

property, without due process of law." U.S. CONST. amend. XIV, § 1. In its previous order, the

Court outlined the requisite standards for a party to bring a claim for procedural due process. The

Court wrote:

> Procedural due-process guarantees are invoked when a state
> actor deprives an individual of a protected life, liberty, or property
> interest. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) ("To
> bring a procedural due process claim under § 1983, a plaintiff must
> first identify a protected life, liberty or property interest and then
> prove that governmental action resulted in a deprivation of that
> interest."). The government must provide reasonable notice to an
> individual of its intention to deprive him of life, liberty, or property.
> *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306,
> 313–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The individual must

26

have a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Mullane*, 339 U.S. at 313–14, 70 S.Ct. 652, 94 L.Ed. 865.  Moreover, "[a]s the Supreme Court has acknowledged, 'the public interest demands that all dangerous conditions be prevented or abated.'" *Freeman v. City of Dallas*, 242 F.3d 642, 652 (5th Cir. 2001) (quoting *Camara v. Mun. Court of City & County of S.F.*, 387 U.S. 523, 537, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)).  Prior notice and a hearing is not constitutionally required when there are exigent circumstances that prevent the government from providing a pre-deprivation process. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 677–80, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Freeman v. City of Dallas*, 186 F.3d 601, 607 (5th Cir. 1999) ("[W]hen pre-deprivation procedural safeguards cannot be expected to protect against the type of deprivation involved, we find that a post-deprivation hearing satisfies due process.").  Deprivations of property do not violate the Due Process Clause if adequate and meaningful post-deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984).

Order on Mot. for Summ. J. at 17–18.  The Supreme Court has "recognized that prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

Here, Kinnison has a legally protected interest.  Kinnison was the legal owner of the structures demolished by the City.  Having identified a protected property interest, Kinnison has proven that governmental action deprived him of that interest.  The City has admitted to, and the evidence before the Court establishes, that the City of San Antonio demolished the structures on Kinnison's property.  Prior to taking that action, the City was required to provide notice reasonably calculated to apprise Kinnison of the planned demolition and afford him an opportunity to present

27

his objections.  As a mortgagee of the property, Kinnison's identity was reasonably identifiable; therefore, he was entitled to notice by mail or personal service.  *See Adams*, 462 U.S. at 798.  In any case, the City admits it provided no notice of its planned demolition; not even constructive notice.

As previously noted, the City relies heavily on the defense that "prior notice is not constitutionally required when there are exigent circumstances that do not allow a municipality to provide notice or hearing prior to the demolition of a property" based on the "exercise of their police powers."[64]  There is no question that municipalities have this authority.  But the inquiry does not end there.  Referring to these situations, the United States Supreme Court has declared:  "There are extraordinary situations that justify postponing notice and opportunity for a hearing.  These situations, however, must be truly unusual.  Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing."  *Fuentes v. Shevin*, 407 U.S. 67, 89–91, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).[65]

The issue here is whether an emergency situation existed that warranted the demolition of the property without pre-deprivation notice.  If no emergency situation existed to justify the City's demolition of the structures on Kinnison's property without notice, then the City's actions failed to provide Kinnison with procedural due process.  While it has here been established that the structures constituted a nuisance, the City has failed to establish that the procedures it employed to demolish

_____

[64]Def. City's Mot. at 4–5.

[65]While the Supreme Court stated in *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that the lack of a predeprivation process will not violate due process in certain circumstances provided there is sufficient postdeprivation process available to the person deprived of his property interest, "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking."  *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

the structure afforded Kinnison with procedural due process.  Even if the structures posed a danger to persons and property, the City has not raised a genuine issue of fact that exigent circumstances prevented it from providing notice to Kinnison.  In fact, the City's own actions and timing of events demonstrate otherwise.[66]

City inspector Alice Guajardo inspected the property on April 8, 2009.  Considering the property to be "possibly a dangerous premise in need of summary abatement", Guajardo requested that a building inspector evaluate the property.  Building inspector Ramiro Carrillo inspected the property on April 10, 2008.  City officials approved the demolition of the property a week after Guajardo's initial inspection with the final approval being signed on April 16, 2008.  Within that time, Alice Guajardo obtained the record owner of the property based on records held by the Bexar County Appraisal District.  Guajardo contacted the person listed as the owner and was told that the property had been sold.  These attempts at notice defeat the City's own argument that pre-demolition notice was not possible.  Furthermore, the number of days the City allowed to elapse between Guajardo's and Carrillo's assessments of the property and the date of the demolition further impugns the City's claim that exigent circumstances precluded pre-deprivation notice.  Moreover, the City provided no type of contemporaneous notice to Kinnison.  A predeprivation process for Kinnison would not have been impossible or impracticable because the City could have proceeded under provisions for declaring the property a nuisance as outlined in Texas law.  The evidence before the

---

[66]This case differs from situations in which city officials have ordered the demolition of a structure based on an emergency situation.  For example, in *Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994), upon notification that a building was in immediate danger of collapse onto a public street and neighboring occupied home at 11:30 a.m., the City demolished the property at 4:10 p.m. on the same day.  In the unreported case *Kshel Realty Corp. v. City of New York*, No. 01 Civ. 9039(LMM), 2006 WL 2506389 (S.D.N.Y. Aug. 30, 2006), the city ordered the demolition of a building on the same day in which a portion of the building's facade fell into a vacant area adjoining the building.

Court establishes that the City's actions violated Kinnison's right to procedural due process.

6.      *The City engaged in an unreasonable seizure of property in violation of the Fourth Amendment.*

Kinnison moves for summary judgment on his claim that the City violated the Fourth Amendment.  The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. CONST. amend. IV; *Ker v. California*, 374 U.S. 23, 30–34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).  Although the motion fails to provide the Court with any substantial analysis on his claim, the Court can evaluate whether Kinnison established his Fourth Amendment claim based on the evidence provided by the parties in their motions.  "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"  *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)).  This issue is undisputed given that the City demolished the structures on Kinnison's property; thereby, depriving him of his possessory interest in those structures.  While the City conducted the demolition without a warrant, the lack of a warrant is not in issue since the Fifth Circuit has held that the existence of a warrant is not necessary "to effectuate a valid seizure and demolition of the nuisance structures, [but] the fundamental Fourth Amendment question of reasonableness remains, a question decided by balancing the public and private interests at stake."  *Freeman v. City of Dallas*, 242 F.3d 642, 652 (5th Cir. 2001) (en banc), *cert. denied*, 534 U.S. 817, 122 S.Ct. 47, 151 L.Ed.2d 18.  The Court's inquiry into Kinnison's Fourth Amendment claim focuses on the reasonableness of the City's actions by evaluating the public and private interests at stake.

30

"'The public interest demands that all dangerous conditions be prevented or abated.'" *Id.* (quoting *Camara*, 387 U.S. at 537).  It is reasonable for the City of San Antonio to maintain minimum property maintenance standards to protect persons and neighboring property. "Nevertheless, a city may not arbitrarily enter abatement orders or declare the existence of nuisances with no underlying standards." *Id.* at 652–53.  In this case, the evidence demonstrates that the City of San Antonio declared the property a nuisance after inspection by two City inspectors whose recommendations were reviewed and accepted by other City officials.  The evaluation of the structures on the property yielded a determination that they posed a danger to persons and other property; a determination made pursuant to the City's police power.

While the City's determination that the structures on Kinnison's property constituted a nuisance is reasonable, the City's finding that the property required immediate demolition even though the City's actions failed to reflect any emergency places the reasonableness of the City's procedures into question.  The City failed to provide Kinnison with notice, an opportunity to contest the determination, time to repair the property, any chance to seek other remedies, hearings, or any prior judicial review.  The City's failure to provide Kinnison with procedural due process undercuts the reasonableness of the City's demolition of the structures on his property.

The Fourth Amendment protects the property owner's expectations of privacy—the property owner's private interests—that society recognizes as legitimate.  *Id.* at 653 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 338, 105 S.Ct. 733, 741, 83 L.Ed.2d 720 (1984)).  As the owner of an unsecured, vacant, dilapidated property, Kinnison's expectation of privacy is diminished in relation to those of other property owners.  The evidence before the Court shows an unsecured property with a collapsing roof and buckling foundation visible from the public sidewalk with open spaces and

31

holes in the walls to allow public access.  Since the property was uninhabited and vacant, the inspections did not invade Kinnison's privacy.  However, Kinnison still maintained a private interest in *the structures on his property*; an interest that the City destroyed.

While "an exigency of sufficient proportions" may "render a warrantless entry 'reasonable,'" the length of time the City expended in contemplating the appropriate remedial measure before demolishing Kinnison's property fail to prove that any exigent circumstance warranted its demolition.  *Cf. Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (discussing exigent circumstances that justify warrantless entry).  The actions of the City fail to establish any reasonable basis for the seizure, *i.e.*, the demolition, of Kinnison's property.  Consequently, the Court find that the City has violated Kinnison's right to be free from unreasonable seizures of property pursuant to the Fourth Amendment.

7.    *The Court disposed of Kinnison's claim that the City violated Substantive Due Process in a previous order.*

Kinnison has moved for summary judgment on his substantive due process claim even though the Court already granted summary judgment in favor of the City on this issue.[67]  Kinnison restates many of his arguments from his response to the City's initial motion for summary judgment.[68]

_____

[67]Order on Mot. for Summ. J. at 21.

[68]To the extent that the lack of clarity in Kinnison's motion and responses have resulted in the Court missing one of Kinnison's substantive due process arguments, summary judgment is still appropriate for the City on this issue.  To prevail on a claim that governmental action violates substantive due process, a plaintiff must establish that the government action is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing' such a claim." *Albright v. Oliver*, 510 U.S. 266, 273, 114

8.      *Relief Pursuant to 28 U.S.C. § 1983.*

Recovery for the violation of constitutional rights is based on establishing a claim pursuant to 28 U.S.C. § 1983.  Local governments may be liable for relief for official policies that deprive an individual of his constitutional rights.  *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  To establish a claim pursuant to Section 1983 against a municipality, a plaintiff must show "'(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *Bustos v. Martini Club*, 599 F.3d 458, 467 (5th Cir. 2010).  The evidence and pleadings before the Court establish the elements of a Section 1983 claim against the City.  The City of San Antonio admits to demolishing the structures on Kinnison's property pursuant to its authority as a home rule municipality with the authority to abate nuisances pursuant to its ordinances, statute, and police powers.  Municipal authorities, from the inspectors to department directors, acted within their official capacities to order the demolition Kinnison's property without prior notice even though the property was merely a nuisance and did not constitute an emergency situation.  As a result of the City's actions, it deprived Kinnison of procedural due process and subjected him to an unreasonable seizure of his property.  As a result, the evidence and admissions before the Court establish Kinnison's claim against the City pursuant to 28 U.S.C. § 1983.

**C.  Motion to Strike Plaintiff's "Expert" Witness**

In Kinnison's response to the motions for summary judgment, he includes the affidavit of

_____

S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)).  Here, Kinnison has alleged violations of the Fifth Amendment and Fourth Amendment in addition to his claim that the City violated substantive due process.  Although Kinnison alleges that the City acted arbitrarily and capriciously, his claim fits within the contours of the Fourth and Fifth Amendments.

Paul Kinnison, Jr., an architect who happens to be the Plaintiff's father.  In the affidavit, Paul Kinnison discusses his assessment of the soundness of the structure after a personal visit to the property in March 2008.  Kinnison discusses his forty years of experience in architecture and his assessment that damage to the property was not structurally significant.

Defendants move to strike Plaintiff's witness since he has never designated him an expert witness nor has Plaintiff disclosed that he planned to use Paul Kinnison's testimony to respond to the conclusions of the City's inspectors.  Pursuant to Rule 37(c)(1)(A): "If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1)(A).  The Scheduling Order set a deadline of February 18, 2009, for the parties to designate their experts, and discovery concluded on March 5, 2010.  Plaintiff has not supplemented his discovery responses or sought leave to amend his expert designation.  Plaintiff responds, without support, that Defendants are not prejudiced because they were aware that Paul Kinnison was an architect who had been to the property.  In the alternative, Plaintiff seeks to introduce Kinnison's testimony as "complex lay opinion."

Contrary to Plaintiff's unsupported claim, his failure to designate expert witnesses at the appropriate time is highly prejudicial since Defendants had no notice of Plaintiff's planned designation.  Moreover, Kinnison's affidavit conveys his assessment of the property based on his expertise as an architect; the affidavit does not merely recount what he witnessed.  Plaintiff is not providing Paul Kinnison's affidavit as if he is a fact witness.  Plaintiff is providing the affidavit for Kinnison's ultimate opinions.  The deadline for designating expert witnesses has long since passed,

34

the discovery deadline has expired, and trial for remaining issues looms. "[A]n attorney should be cognizant of the appropriate methods and procedures followed in federal court, including any court imposed deadlines." *Melendez-Alvarado v. Chertoff*, No. EP-07-CA-374-FM, 2008 WL 3914821, at *2 (W.D. Tex. Jul. 3, 2008).[69]  Failure to adhere to the deadline is not harmless.

## Conclusion

The individual Defendants' motion for summary judgment is GRANTED.  No claims remain against the individual Defendants.  The Defendant City's motion for summary judgment is GRANTED IN PART AND DENIED IN PART while Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

The Court grants summary judgment in favor of the City and against Kinnison on his claims for liability under Chapter 214 of the Texas Local Government Code; violation of Article I, Section 17 of the Texas Constitution; and violation of the Takings Clause of the Fifth Amendment.  The Court has already granted summary judgment in favor of the City and against Kinnison on Kinnison's claims that the City violated Section 6-175 of the San Antonio Code of Ordinances and substantive due process.

The Court grants summary judgment in favor of Kinnison and against the City on his claims that the City violated procedural due process under the Fourteenth Amendment of the Constitution and that the City conducted an unreasonable seizure of property in violation of the Fourth Amendment.

The motion to strike the affidavit of Paul Kinnison is GRANTED.

---

[69]Even if the Court were to evaluate Paul Kinnison's affidavit based on his observations in March 2008, it would not suffice to rebut the City inspectors' observations and assessments, which they made in April 2008.

The only issue for trial involves damages.  Plaintiff Paul Kinnison and the Defendant City of San Antonio shall each submit a trial brief regarding the appropriate measures of damages on or before August 18, 2010.  Response briefs may be submitted on or before August 24, 2010.

It is so ORDERED.

SIGNED this 21st day of July, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE