# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PAUL CHANCE KINNISON, | § | |
|     *Plaintiff,* | § § § | |
| v. | § | Civil Action No. 08-CV-421-XR |
| CITY OF SAN ANTONIO, | § § § | |
|     *Defendant.* | § § § | |

**ORDER ON COSTS AND MOTION FOR ATTORNEY'S FEES**

On this day, the Court considered Plaintiff's First Amended Motion for Attorney's Fees and Bill of Costs (Docket Entry No. 141), Defendant's Response (Docket Entry No. 142), and Plaintiff's Reply (Docket Entry No. 145). Having considered the documents and the relevant authority the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorney fees and costs.

**Background**

The case involves the demolition of two structures at 332 E. Myrtle Street, in San Antonio, Texas. Plaintiff Paul Chance Kinnison purchased the property from Deepak Land Trust, and intended to renovate and live in the property.[1] On or about April 8, 2008, City of San Antonio inspector Alice Guajardo inspected the house on the property at 332 E. Myrtle Street, found it to be unsecured and vacant, and declared that it posed a danger to the public. She prepared the necessary

---

[1] Neither party apprised the Court of the specific date when Kinnison purchased the property from Deepak Land Trust. In their pleadings, the parties state that the house at 332 E. Myrtle Street, San Antonio, Texas, was deemed previously an imminent danger but not demolished. No summary judgment evidence is available regarding the facts and circumstances regarding this issue or whether the Deepak Land Trust or another individual was the owner of the property at that time.

documents to have the property demolished,[2] and contacted Richard Brownlee, trustee of the Deepak Land Trust, which was listed as the owner of record. Brownlee told Guajardo that the property had been sold, but he could not identify the owner.

At Guajardo's request, City Senior Building Inspector Ramiro Carrillo inspected the property on April 10, 2008. Carrillo recommended that the house be demolished to Defendant J. Barry Archer, Acting Director of the Development Services Department. Archer reviewed the materials submitted by Carrillo and accepted his recommendation on April 10, 2008.

Carrillo then recommended that both the house and accessory structure be scheduled for emergency demolition to Roderick J. Sanchez, Director of the City's Development Services Department. Sanchez reviewed the materials submitted by Carrillo and accepted his recommendation. On April 15, 2008, Sanchez declared:

> Due to the extensive damage and its unsafe structural condition, it was my determination that the main and accessory structures located at 332 E. Myrtle presented a clear and imminent threat to life, safety, and/or property necessitating an immediate demolition. In my judgment, no other abatement procedure was reasonably available under these circumstances.

On April 16, 2008, Director of Housing and Neighborhood Services David D. Garza concurred in the assessment that the structures at 332 E. Myrtle presented a clear and imminent

---

[2] Guajardo obtained ownership records from the Bexar County Appraisal District, records from the City of San Antonio tax system, prepared photographs, prepared an Investigator Report Form and Nuisance Definitions Report, prepared a geographic information system mapping report, procured an environmental survey form, obtained an affidavit from the City's Director of Development Services, notified the City of San Antonio Historic Preservation Office, notified City of San Antonio Council Member Mary Alice Cicneros, searched city records to determine if any work permits had been requested or approved for the property, procured an affidavit from the City's Director of Housing & Neighborhood Services, prepared forms for the City public service department to disconnect utility services, and prepared the demolition work order.

threat to life, safety, and/or property necessitating an immediate demolition.

On April 17, 2008, the City demolished the house and accessory structure. Kinnison received a telephone call from Mr. Cuellar of Cuellar Foundation, which had been contracted by Kinnison to repair the foundation of the house and had begun repairing the property on April 16, 2008. While Mr. Cuellar was present, the City's demolition crew arrived and demolished the house and accessory structure. On April 28, 2008, the City sent post-demolition written notice to the Deepak Land Trust, which was listed as the owner of record for the property.

Kinnison filed suit against the City of San Antonio; J. Barry Archer, individually and in his official capacity as Acting Director of the Development Services Department; Michael Constantino, individually and in his official capacity as Development Services Manager in the Planning and Development Services Department; and Reyes Hernandez, individually and in his official capacity as Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Services Department. Kinnison asserted multiple causes of action, including violation of Section 6-175 of the City's Code of Ordinances; violation of Chapter 214 of the Texas Local Government Code; violations of Article I, Sections 17 and 19 of the Texas Constitution; violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; "injury by motor vehicle of equipment"; trespass to real property; intrusion on seclusion; and a request for declaratory relief.

**Procedural History**

Kinnison filed suit against the City, Archer, Constantino, and Hernandez in the 73rd Judicial

District Court of Bexar County, Texas.³ Defendants timely removed this case.⁴ The live pleading is Plaintiff's First Amended Complaint.⁵

The Court dismissed certain claims against the individual defendants⁶ and dismissed certain claims against the City after considering the Court's jurisdiction in this matter.⁷ The Court granted the individual Defendants' motion for summary judgment and granted in part and denied in part the City's motion to dismiss state claims against them.⁸ Defendant City of San Antonio's motion for summary judgment was granted in part and denied in part.⁹ The parties were ordered to provide the

---

³Pl.'s Original Pet., May 16, 2008 (attached as exhibit to Docket No. 1).

⁴Notice of Removal, May 22, 2008 (Docket No. 1).

⁵Pl.'s 1st Am. Compl., Oct. 15, 2008 (Docket No. 28).

⁶The Court dismissed claims against the individual Defendants in their official capacities as redundant to Kinnison's claims against the City, and the Court dismissed Kinnison's Fourth Amendment and substantive due process claims against the individual defendants. Order on Mot. to Dismiss, Mar. 5, 2009 (Docket No. 53).

⁷The Court found that Kinnison's Fifth Amendment claims were unripe, the as-applied substantive due process challenge as vague was ripe, the as-applied Equal Protection claim under the Fourteenth Amendment was ripe, the as-applied Fourth Amendment claims were ripe, the procedural due process and substantive due process claims were subsumed under the Fifth Amendment and Fourth Amendment claims and/or required further factual development to become ripe, and the facial procedural due process claim was ripe. Plaintiff's facial Fourth Amendment claim based on the lack of a warrant was foreclosed by the Fifth Circuit's decision in *Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001) (en banc). The Court exercised supplemental jurisdiction over Plaintiff's state statutory and state constitutional claims and ruled that Kinnison could pursue his unripe claims in the alternative to and contingent upon resolution of his state inverse condemnation claim. Order, Mar. 2, 2009 (Docket No. 52).

⁸The Court granted summary judgment in favor of the individual Defendants on Plaintiff's federal constitutional claims, and dismissed Plaintiff's state tort claims pursuant to Section 101.106(e) of the Texas Civil Practice & Remedies Code. Order on Mot. for Summary J. & Mot. to Dismiss, Mar. 8, 2010 (Docket No. 94).

⁹The Court granted summary judgment in favor of the Defendant City of San Antonio on the following claims: declaratory relief pursuant to the Texas Declaratory Judgment Act; violation of

Court with cross motions for summary judgment as to the remaining claims.[10]

The individual Defendants, Defendant City of San Antonio, and Plaintiff moved for summary judgment on June 7, 2010, on the remaining claims in this case.[11] The Court granted summary judgment in favor of Kinnison and against the City on his claims that the City violated procedural due process under the Fourteenth Amendment of the Constitution and that the City conducted an unreasonable seizure of property in violation of the Fourth Amendment.[12] A jury trial was held on damages on September 13-14, 2010, and the jury returned a verdict of $52,000 in favor of the Plaintiff.

**Legal Standard**

Rule 54(d) of the Federal Rules of Civil Procedure provides that costs "shall be allowed as of course to the prevailing party." FED. R. CIV. P. 54(d). 28 U.S.C. § 1920 defines the term "costs"

---

Section 6-175 of the City of San Antonio's Code of Ordinances; violations of Sections 214.0011 and 214.00111 of the Texas Local Government Code; violation of Article I, Section 19 of the Texas Constitution; violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; violation of substantive due process under to the Fourteenth Amendment of the United States Constitution; and state law tort claims (*i.e.*, "injury by motor vehicle," trespass to real property, and intrusion on seclusion). Order on Mot. for Summ. J., Mar. 26, 2010 (Docket No. 96). The Court denied the motion as to the following claims: violation of Section 214.001 of the Texas Local Government Code; violation of Article I, Section 17 of the Texas Constitution; violation of procedural due process pursuant to the Fourteenth Amendment of the United States Constitution; and violations of the Fourth and Fifth Amendments of the United States Constitution. *Id.*

[10]Am. Scheduling Order, Mar. 9, 2010 (Docket No. 95).

[11]Individual Defs.' 2d Mot. for Summ. J., Jun. 7, 2010 (Docket No. 99); Pl.'s Mot. for Summ. J., Jun. 7, 2010 (Docket No. 100); Def. City's 2d Mot. for Summ. J., Jun. 9, 2010 (Docket No. 101).

[12]Order on Mot. for Summ. J., Jul. 21, 2010 (Docket Entry No. 111). The Court also granted summary judgment in favor of the City and against Kinnison on his claims for liability under Chapter 214 of the Texas Local Government Code; violation of Article I, Section 17 of the Texas Constitution; and violation of the Takings Clause of the Fifth Amendment. *Id.*

as used in Rule 54(d) and enumerates the expenses that a federal court may tax as a cost under the authority found in Rule 54(d). *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004); *see also Crawford Fitting Co. v. Gibbons*, 482 U.S. 437, 441 (1987). Thus, unless otherwise authorized by statute, the types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920, which provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C.A. § 1920.

For attorney's fees, an award is governed by the same law that serves as the rule of decision for the substantive issues in the case. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). A prevailing party in a 42 U.S.C. § 1983 claim may be entitled to an award of attorney's fees. 42 U.S.C. § 1988(b). Such an award must be proportional, and only to compensate time "reasonably expended" in pursuance of the claims. *Hensley v. Eckhart*, 461 U.S. 424, 432 (1983). The Court has discretion in determining the proper amount of a fee award. *Id.* at 437; *see also Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993).

The Court will determine the appropriate award amount by calculating the "lodestar": the number of hours reasonably spent on the litigation multiplied by a reasonable hourly billing rate. *Watkins,* 7 F3d at 457 (citing *Hensley*, 461 U.S. at 434); *See Hensley*, 461 U.S. at 433-436. As a rule

of thumb for the reasonableness of attorney's fees, the Court will use the factor test outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Watkins*, 7 F.3d at 457. The *Johnson* factors are:

 (1) the time and labor required;

 (2) the novelty and difficulty of the legal questions;

 (3) the requisite skill to perform the legal service properly;

 (4) the preclusion of other employment by the attorney due to acceptance of the case;

 (5) the customary fee for similar work in the community;

 (6) whether the fee is fixed or contingent;

 (7) time limitations imposed by the client or the circumstances;

 (8) the amount involved and the results obtained;

 (9) experience, reputation, and ability of the attorneys;

 (10) "undesirability" of the case;

 (11) nature and length of the professional relationship with the client; and

 (12) awards in similar cases.

*Johnson,* 488 F.2d at 717-719.

The lodestar is presumptively reasonable, but may be modified in exceptional cases to account for any relevant *Johnson* factors that are not reflected in the lodestar. *Shipes v. Trinity Industries*, 987 F.2d 311, 320 (5th Cir. 1993). Any such adjustment must be justified by specific evidentiary findings and reasoning. *Id.*

## Analysis

Plaintiff has filed a bill of costs, a motion for attorney's fees, and a motion for expert witness

fees. The Court evaluates each independently.

## I. Bill of Costs

Plaintiff seeks a total of $173.22 in costs: $45.12 for "Fees of the Clerk", and $128.10 for "Fees and disbursements for printing."[13] The Bill of Costs is not accompanied by any receipts or other proof justifying the claimed costs, and the affidavit submitted by Plaintiff's counsel does not address the basis of these charges.[14] It appears that Plaintiff has submitted a Pacer Billing History Report in connection with the Bill of Costs, but has not provided any authority that Pacer fees are recoverable under any of the 28 U.S.C. § 1920 categories.[13]

Accordingly, Plaintiff is ORDERED to submit proof of the costs he requests to be taxed against Defendant, and to justify the costs under the appropriate 28 U.S.C. § 1920 category.

## II. Attorney's Fees

Plaintiff seeks a total of $337,466.87 in attorney fees, based on calculation of total fees as $134,978.75 and a lodestar multiplication factor of 2.5.[13] Plaintiff's counsel has submitted an affidavit attesting to each of the *Johnson* factors.[14] He asserts that (1) the case required a great amount of time and labor; (2) the case presented novel and difficult legal questions; (3) he

---

[13] Pl.'s Form AO-133 Bill of Costs, Sep. 28, 2010 (Ex. A-4 to Pl.'s Mot. for Attorney's Fees).

[14] Aff. of S. Tyler Rutherford, Sep. 28, 2010 (Ex. A to Pl.'s Mot. for Attorney's Fees).

[13] Pacer Billing History Report (Ex. A-4 to Pl.'s Mot. for Attorney's Fees). Furthermore, the Pacer report does not correspond to any categorical dollar amounts claimed on Plaintiff's Bill of Costs; it totals $57.44 for 718 pages printed, and only 380 of those pages relate to this case as opposed to other cases in which Plaintiff's counsel appears before this Court.

[13] Pl.'s Mot. For Attorney Fees at 3.

[14] *See* Rutherford Aff.

performed his duties with the requisite skill; (4) he dedicated approximately 1/8 of his time to the case, thus requiring him to pass over other work; (5) his $250 per hour fee is customary; (6) the contingency fee arrangement should not diminish the amount of the award; (7) the amount in controversy was substantial and the verdict was a "great financial and moral victory to the client"; (8) he has a good reputation and significant experience and ability as a litigator; (9) litigating against the City is undesirable and has created "wear on the human psyche"; and (10) his friendship with the client did not affect the fee calculations.[15] Plaintiff also requests that the Court apply a 2.5 multiplier to the lodestar in consideration of the *Johnson* factors.[16]

The City objects that (1) Plaintiff failed to produce fee itemization when requested during discovery; (2) the claimed $250 hourly rate is excessive; (3) the lodestar multiplier of 2.5 should be denied; (4) Plaintiffs' counsel failed to exercise proper billing judgment; and (5) Plaintiff did not prevail on all claims nor against all parties, and has made no effort to segregate fees between claims according to parties, prevailing claims, or damages.

## A. Hourly Rate

The affidavit submitted by Plaintiff's counsel asserts that his $250 hourly rate is customary.[17] Plaintiff's motion presented no evidence that the rate is standard other than the affidavit's assertion that friends of colleagues of Plaintiff's counsel "bill civil litigation out at $400.00, $600.00, even $800.00."[18] Defendant has submitted two affidavits of attorneys for the

---

[15] *Id.* at 2-5.

[16] *Id.* at 5.

[17] Rutherford Aff. at 3.

[18] *Id.*

City, which assert that the average hourly rate for work in similar cases is between $125 and $165.[17] The City also notes that the rate charged by this Court for court-appointed counsel is $125 per hour, and that Plaintiff's counsel only recently obtained a license to litigate in federal court.[18] In reply to the City's response, Plaintiff submitted the 2009 State Bar of Texas Hourly Rate Fact Sheet, which reflects an average hourly rate of $207 for attorneys in the San Antonio metropolitan area with between 11 and 15 years of experience.[19]

The Court must also take into account the *Johnson* factors. Plaintiff's counsel's 13 years of experience as a practicing attorney in Bexar County do not constitute exceptional "ability, reputation, or experience" worthy of increasing the hourly rate. *See Johnson*, 488 F.2d at 717-719. Nor is the Court persuaded that the nature of this case was particularly undesirable, or that it has required such a large amount of counsel's time that it has precluded him from other employment. *See id.* Thus, the Court concludes that the *Johnson* factors weigh in favor of applying the average hourly rate for the region. Accordingly, the Court will use an hourly rate of $207 to calculate the lodestar.

**B. Hours Billed**

It appears that Plaintiff is seeking an attorney's fees award for all hours billed in relation to this litigation.[20] The City argues that Plaintiff has failed to segregate the hours billed based on

---

[17] Aff. of Judith Sanchez 2, Oct. 7, 2010 (Ex. A to Def.'s Resp.); Aff. of Kenneth Clark, Oct. 8, 2010 (Ex. B to Def.'s Resp.).

[18] Def.'s Resp. at 4.

[19] State Bar of Texas Hourly Rate Fact Sheet, 2009 (Appx. 2 to Pl.'s Reply). Plaintiff's counsel states that he has 13 years of experience.

[20] Pl.'s Attorneys' Fee and Legal Assistants' Fee Calculation (Ex. A-1 to Pl.'s Mot.).

unsuccessful claims, unsuccessful damages theories, and claims asserted against additional defendants, which were dismissed.[21] The City also argues that Plaintiff's counsel did not exercise proper billing judgment, and submits individual objections to a number of specific line items on the billing calculation report submitted by Plaintiff's counsel.[22]

The Court must determine the appropriate compensable hours based on the attorneys' time records, and compensate only for those hours reasonably spent in relation to prevailing claims. *Shipes*, 987 F.2d at 319 (*citing Alberti v. Klevenhagen*, 895 F.2d 927, 930 (5th Cir. 1990), *vacated in part*, 903 F.2d 352 (5th Cir. 1990)). If a party raises unrelated claims and does not prevail on them, they are treated as if they had been raised in separate lawsuits. *Hensley*, 461 U.S. at 434. Furthermore, even when claims are interrelated, it is not always reasonable to award attorneys fees based on the whole of the hours spent on the litigation. *Id.* at 436. Rather, the critical factor is the degree of success achieved by the prevailing party. *Id.* The Court may either try to identify specific hours that should be eliminated from the total, or may simply reduce the total amount of the award in relation to the limited success obtained. *Id.*

Here, Plaintiff asserted twelve causes of action against both the City and three individual employees of the City in their individual and official capacities. All claims against the individual defendants were dismissed. All claims against the City were resolved on the merits through dispositive motions, and only two were resolved in Plaintiff's favor. Although all the claims arose from the same specific factual basis, the legal theories underlying several of the ten unsuccessful claims are quite distinct from those implicated in the two successful claims.

---

[21] City's Resp. at 6-9.

[22] *Id.* at 5-6; Ex. C. To Def.'s Resp.

Plaintiff then sought compensatory damages for loss of property, as well as damages for mental anguish and punitive damages. The Court held that, as a matter of law, Plaintiff could only recover damages for loss of property. Thus, Plaintiff prevailed on a rather small percentage of the total claims presented and damages sought.

Plaintiff's brief does not segregate the fees according to parties, claims, or damages. The calculations submitted as support for Plaintiff's motions show a total of 535 attorney hours billed and 26.7 legal assistant hours billed for the entirety of the case.[23] The Court notes that some of this time was dedicated to activities that cannot easily be segregated, such as depositions and trial. Even so, the number of hours billed should be reduced to reflect that Plaintiff prevailed on only a small number of its claims and assertions. The City has flagged a number of the specific time entries submitted by Plaintiff's counsel and asserts that they relate to research, filings, and email communications pertaining to non-prevailing claims and to the individual defendants.[20]

The Court has independently reviewed the time logs submitted by Plaintiff's counsel, and subtracted those time entries relating to non-prevailing claims, claims against dismissed defendants, and Plaintiff's proposed expert whose report and testimony were not admitted. The Court has also reduced the total number of recorded hours for several entries which were not segregated between claims or defendants. Finally, the Court has also reduced the time recorded for a number of entries which the Court finds to be excessive and/or duplicative, and preparation of proposed filings which were never ultimately filed in the case. Accounting for these modification, the Court calculates a total of 295.1 attorney hours expended on the litigation. At a

---

[23] Attorneys' Fee and Legal Assistants' Fee Calculation Table 17 (Ex. A-2 to Pl.'s Mot.).

[20] *See* Ex. C to Def.'s Resp.

rate of $207 per hour, this results in a total of $61,085.70. The Court also reduces the legal assistant hours to 22.1. At a rate of $37.50 per hour, this results in a total of $828.75. Accordingly, the Court calculates a total lodestar of $61,914.40.

## C. Multiplication of the Lodestar

Plaintiff claims that the *Johnson* factors justify multiplication of the lodestar amount by 2.5. However, he has failed to demonstrate that any of the *Johnson* factors are not already reflected in the lodestar amount. Accordingly, the request to multiply the lodestar by 2.5 is denied.

## III. Expert Witness Fees

Plaintiff also seeks expert witness fees pursuant to 42 U.S.C. § 1988(c). That provision only authorizes an award of expert fees in legal actions brought pursuant to 42 U.S.C. § 1981 or 42 U.S.C. § 1981a. Plaintiff's constitutional challenges are brought under 42 U.S.C. § 1983. Furthermore, Plaintiff never qualified any expert witness in this case. Accordingly, Plaintiff's motion for expert witness fees is DENIED.

**Conclusion**

Plaintiff's motion for expert witness fees is DENIED. Plaintiff's motion for attorney's fees and costs is GRANTED IN PART and DENIED IN PART. It is ORDERED that Plaintiff is awarded $61,914.40 in attorney's fees. Finally, Plaintiff is ORDERED to submit detailed proof of his costs, and to justify each cost under the appropriate 28 U.S.C. § 1920 category.

It is so ORDERED.

SIGNED this 12th day of April, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE