# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| PAUL C. KINNISON | § | |
| | § | |
| v. | § | |
| | § | SA-08-CV-421-XR |
| CITY OF SAN ANTONIO | § | |

### ORDER

On this date came on to be considered Defendant's motion to exclude Ann McGlone as an expert witness (docket no. 193) and the City's motion for summary judgment (docket no. 194).

### BACKGROUND

Plaintiff brings this suit alleging that the City wrongfully demolished property he owned at 332. E. Myrtle in San Antonio, Texas. In 2006, Deepak Land Trust acquired the property.[1] On April 9, 2008, Deepak Land Trust sold the property to Plaintiff Paul Chance Kinnison.[2] Plaintiff alleges that immediately subsequent to the purchase of the property he contracted with Cuellar Foundation, Inc. to repair the foundation, and that between April 9 and April 17, 2008, Cuellar Foundation had "secured" the foundation.

From April 8 through April 17, 2008, Alice Guajardo, a Dangerous Premises Inspector for the City of San Antonio inspected the premises in response to a "311 call" complaining of a dangerous premise.[3] In her affidavit Ms. Guajardo claims the premises were unsecured, and she entered the property and took various photographs. She opined that the building was a danger to the public, had sustained fire damage, the foundation required repair, and the floor was rotting in

---

[1] City's motion for summary judgment, Docket Number 194-1 at page 15.
[2] *Id*. at 194-9 at page 12.
[3] *Id*. at 194-1 at page 1.

several places. She requested that a building inspector inspect the property. Sometime later Ramiro Castillo inspected the premises and agreed that the building was a dangerous premise.

Ms. Guajardo then began preparing the necessary paperwork to initiate demolition of the building. During this process she searched the Bexar County Appraisal District records and found that Deepak Land Trust was listed as the owner of the property. According to Ms. Guajardo she contacted Deepak's trustee, Richard Brownlee, to inform him of the planned demolition. She acknowledges that Mr. Brownlee advised her that the property had been sold, but she claims that Mr. Brownlee told her that he did not have any contact information for the new owner.[4] In contrast, Mr. Brownlee states in his deposition testimony that he was no longer the owner, the property was not dangerous, that he gave a female city representative (he did not remember her name) the phone number for Mr. Kinnison, and that he told the city representative the name of the title company that closed on the property and the name of a representative for the title company.[5]

Ms. Guajardo also states that she checked City records to see whether anyone had obtained any building permits to work on the property and found no such records.[6] Ultimately

---

[4] *Id.* at 194-1 at page 3.

[5] *Id.* at 194-11 at pages 59-60, 91, 94.

[6] Both sides vigorously dispute whether the City acted reasonably in providing pre-demolition notice. As noted herein, Ms. Guajardo made no attempt to provide notice to the purported owner of the property until the day of demolition. The City argues that because it takes time for deed records to be processed by the Bexar County Appraisal District, prior to the demolition a search of BCAD's electronic database would not have revealed Mr. Kinnison as the new owner. The City argues that BCAD did not process the records regarding Kinnison's purchase until April 28, 2008. See Docket Number 194-9 at page 18. The Bexar County Clerk's office, however, actually receives and files property deeds. The Kinnison purchase was received and filed by the County Clerk's office on April 9, 2008 at 1:52 p.m. See Docket Number 194-9 at page 21. The record is unclear whether a city employee could have called or accessed the Bexar County Clerk's office to determine whether a deed had been recently filed. Id. at pages 21, 25. The City argues that only a manual search of approximately 1,200 recently filed documents could have been done. Id. at 194-10 at page 12. In any event, assuming the City could not have determined any change in ownership by checking either BCAD or Bexar County Clerk records, there is conflicting testimony as to whether Deepak provided the City name and telephone number for Mr. Kinnison. Further, the City's demolition crew encountered repairman hired by Mr. Kinnison when they arrived to demolish the property. Despite only providing Deepak less than two hours' notice of the demolition and encountering a work crew at the property, the City proceeded to demolish the structures.

David D. Garza, the Director of Housing and Neighborhood Services agreed with the opinions that the property presented "a clear and imminent threat to life, safety, and/or property necessitating immediate demolition."[7] Finally, Ms. Guajardo states that after all procedures were followed in compliance with City of San Antonio Code of Ordinances, Chapter 6-175, the house was demolished on April 17, 2008.

The records attached to Ms. Guajardo's affidavit reveal that on April 9, 2008 she inspected the premises and found numerous deficiencies. On April 11, she notified the City's historic preservation office that there was "going to be an emergency demolition."[8] She further notified the area city council representative of the deficiencies on April 11, prepared for demolition through April 16, and did not notify Deepak until April 17 at 11:10 a.m.[9] Demolition of the property took place on April 17 at 12:45.[10] On April 28, Mr. Garza sent Deepak a letter informing it that the property had been demolished and that it would be receiving an invoice for the demolition.[11] Prior to demolition, the Bexar County Appraisal District valued the structure at $13,350 and the land at $19,530.[12]

Although the parties agree that repair work was required for the property, they do not agree on whether the property presented "a clear and imminent threat to life, safety, and/or property necessitating immediate demolition" pursuant to the City Code. They further disagree

---

[7] *Id.*
[8] *Id.* at 194-3 at page 7.
[9] *Id.* at 194-1 at pages 8.
[10] *Id.* at 194-1 at pages 7-9.
[11] *Id.* at 194-1 at page 13.
[12] *Id.* at 194-1 at page 15. Oddly, there are conflicting values posted on the BCAD website ($25,030 for the structure and $26,970 for the land for a total of $52,000). *See* http://www.bcad.org/clientdb/Property.aspx?prop_id=120099. There has been no evidence in this case that the land were the structures stood was damaged. Accordingly, the Court will only allow at trial evidence of the value of the structures demolished. To the extent that Plaintiff will argue that the property would have increased in value had he been able to repair the structures, Plaintiff will need to present evidence on what repairs were required and how much he would have incurred in repair costs.

whether the City should have discovered that Mr. Kinnison owned the property prior to the demolition.

## Kinnison I

During Round One of this case, the Court granted in part Kinnison's motion for summary judgment concluding that the City violated procedural due process under the Fourteenth Amendment of the Constitution and that the City conducted an unreasonable seizure of property in violation of the Fourth Amendment. See Docket Number 111. A trial was held on the issue of damages. On September 14, 2010, the jury returned a verdict against the City finding that Plaintiff had suffered a loss of $52,000 as a result of the City's demolition of the structure on E. Myrtle Street. The City appealed the verdict and judgment entered.

On May 31, 2012, the Court of Appeals for the Fifth Circuit vacated the Judgment and ordered a remand. *Kinnison v. City of San Antonio*, 480 Fed. Appx. 271 (5th Cir. May 31, 2012). The Court held that a fact finder could reasonably conclude that under the facts of this case, that there lacked evidence of procedural unreasonableness. Thus, Kinnison's procedural due process claim should have been allowed to proceed to trial. With regard to the Fourth Amendment claim of unreasonable seizure, the Court saw "no reason to depart from the general practice of tethering the outcome of the Fourth Amendment inquiry to whether the property deprivation offended due process." Accordingly, the Court held that summary judgment should not have been granted on Kinnison's Fourth Amendment claim.

In Round Two, the City objects to the designation of its former historic preservation officer as an expert witness and again seeks summary judgment on Plaintiff's claims.

## Motion to Exclude Ann McGlone

Plaintiff has designated Ann McGlone as an expert witness. Ms. McGlone is a registered architect, possesses a master's degree in historic preservation and served as the City of San Antonio's Historic Preservation Officer for fifteen years. She states that after Mr. Kinnison purchased the property, they discussed his intent to restore the property. She opines that the structure was an American Craftsman Bungalow and was designated a historic landmark by the City of San Antonio. She further states that she had previously inspected the premises and noted that although the structure had "suffered fire damage … the primary stud wall boards, ceiling joist and roof rafters were intact." She also notes that doors, window frames, and decorative features were still present. She concludes her report stating that the loss of the structure "was a loss to the community", and "[d]espite the deteriorated condition of the structure it was a landmark and retained its character defining features. "It had significantly more value than a non-historic property in similar condition." During her deposition, she opined that the value of the structure just before demolition was $70,000.

Citing *Daubert*[13], the City argues that any opinion from Ms. McGlone will not assist the trier of fact because the City has already stipulated that the structure was a historic landmark. Further, whether the demolition was a "loss to the community" is not a fact issue in this case. The City argues that because Ms. McGlone is not a licensed appraiser or real estate broker, she lacks expertise to opine on the value of the demolished structure. Finally, the City argues that because Ms. McGlone is not a structural engineer, she lacks the requisite expertise to opine whether the structure was structurally sound or was in imminent danger of collapse.

Ms. McGlone testified that she is qualified to render an expert opinion regarding the monetary value of historic homes based upon her education, work experience, her knowledge of

---

[13] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). *See also* Fed. R. Evid. 702.

historic homes in the various San Antonio historic districts, her knowledge of the City's tax abatement process, and her participation in a study conducted by the Texas Historic Commission that reviewed 1,200 properties located in San Antonio and the value of those properties. The City's objections that Ms. McGlone is not qualified to render an expert opinion on the value of the property are overruled.

Even if the City has stipulated that the structure was a historic landmark, such testimony is relevant to Ms. McGlone's valuation. This objection by the City is overruled.

The City objects to any expert testimony by Ms. McGlone that the demolition of the structure was a "loss to the community." This objection is sustained. This fact is not a fact issue in this case, nor is it relevant to the claim of damages made by Plaintiff.

Further, the City objects to Ms. McGlone's opinions that code compliance employees' merit pay was based on the number of buildings demolished and that there was an unusually high percentage of "landmark" houses demolished under the City's emergency demolition policy. The City argues that her statements are based on speculation, conjecture and hearsay. The Court agrees. Ms. McGlone premises her opinions that these statements are based on her "belief."

With regard to the City's argument that Ms. McGlone is not a structural engineer, and accordingly lacks the requisite expertise to opine whether the structure was structurally sound or was in imminent danger of collapse, those objections are overruled. Ms. McGlone has expertise in renovating historic structures as an architect. She has visited the structure prior to its demolition and can opine on what, if any, changes she observed in its condition.

**Plaintiff's live Complaint**

In the latest Complaint filed August 7, 2012, Plaintiff alleges the following causes of action: (1) the City violated Code of Ordinances of the City of San Antonio, Chapter 6, Art.

VIII, § 6-175; (2) the City and its employees (Archer, Constantino and Reyes) subjected Plaintiff to an unreasonable search and seizure of the property by its being demolished in violation of the Fourth Amendment; and (3) the City deprived him of his property without due process of law in violation of the Fourteenth Amendment.

## City's Motion for Summary Judgment

### City's First Argument

The City argues that Plaintiff's latest complaint attempts to re-urge causes of action previously dismissed by this Court. On March 5, 2009, the Court granted Defendants' motion to dismiss in part. Plaintiff's Fourth Amendment and Substantive Due Process claims against the Individual Defendants were dismissed on the basis of qualified immunity. See Docket Number 53. On March 25, 2010, the Court granted Defendants' motion for summary judgment in part and dismissed Plaintiff's claim that the City violated San Antonio Code § 6-175. See Docket Number 96. In that same order the Court granted the City's motion for summary judgment on Plaintiff's claims that the City violated Plaintiff's substantive due process rights under the Fourteenth Amendment.

With regard to the individual defendants, on March 8, 2010, the Court granted, in part, the individual defendants' motion for summary judgment stating that "Kinnison is unable to pursue claims against the individual Defendants pursuant to 42 U.S.C. § 1983 for violations of procedural due process under the Fourteenth Amendment, equal protection under the Fourteenth Amendment, and the takings clause of the Fifth Amendment." See Docket Number 94.

On July 21, 2010, the Court again ruled upon another motion for summary judgment filed by the Defendants. In that order the Court granted summary judgment in favor of all individual

defendants as to all remaining claims. Accordingly, no claims remained pending against any of the Individual Defendants. See Docket Number 111.

The City's motion for summary judgment on its first argument is granted. All claims previously dismissed by the Court's previous orders remain dismissed. Plaintiff has identified no changes in the law requiring any reconsideration of the previous orders.

Accordingly, only two causes of action are left in this case – whether the City subjected Plaintiff to an unreasonable search and seizure of the property's structures by their being demolished in violation of the Fourth Amendment; and whether the City deprived Plaintiff of his property without due process of law in violation of the Fourteenth Amendment.

**City's Second Argument**

The City argues that *Monell* bars Plaintiff's remaining claims. The City did not raise this argument during Round One or on appeal. Plaintiff argues that the City accordingly waived this issue. The City responds that the *Monell* elements are not affirmative defenses that can be waived, but rather are elements of a Plaintiff's section 1983 case against the City. In the alternative, the City notes that the Court granted the City leave to amend its pleadings and assert any defenses it may have. The City raised *Monell* in its Answer (docket number 182). The Court agrees that the City has not waived its right to press this issue. Nevertheless, for the reasons stated below, the Court concludes that Plaintiff's section 1983 claims may proceed to trial.

The Fifth Circuit has recently restated the *Monell* analysis in *Raymond v. Ector County, Tex.*, 2013 WL 116213 (5th Cir. Jan. 10, 2013) as follows:

> A municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," causes a constitutional violation. *Monell*

*v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, to prevail in a § 1983 municipal liability claim, a plaintiff must show the following three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (*quoting Monell*, 436 U.S. at 694).

Because it requires an official policy promulgated by an authorized policymaker, "[m]unicipal liability cannot be sustained under a theory of respondeat superior." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir.2003); *see also Flores v. Cameron Cnty.*, 92 F.3d 258, 263 (5th Cir. 1996) ("[A] local government may not be held liable under § 1983 for the unconstitutional acts of its non-policymaking employees...."). To determine whether a municipal official is a policymaker, we look to state law to assess whether the official had "final policymaking authority" over the activity at issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Furthermore, "policymaking authority 'may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority.' " *Flores*, 92 F.3d at 269 (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).

An "official policy" may arise either directly from an authorized policymaker's "statement, ordinance, regulation, or decision," or indirectly from a "persistent, widespread practice" of non-policymaking municipal employees that "is so common and well settled as to constitute a custom." *Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam). With respect to direct policymaker action, a single discretionary action taken by a policymaking official does not establish an official policy unless the official is "responsible for establishing final government policy" with respect to the discretionary action taken. *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 699 (5th Cir. 1998) (*quoting Pembaur,* 475 U.S. at 483). With respect to official policy arising from custom, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom" and "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581 (quotation marks omitted).

It is undisputed here that the City's policymaker (i.e. the City Council) adopted Code 6-175. Accordingly, the first two elements have been established - a policymaker and an official policy. The City in its reply brief (docket number 199) acknowledges that it "is undisputed that

the ordinance made the basis of Plaintiff's complaint, Ordinance 6-175, was passed by the San Antonio City Council." The City then confusingly argues that the various city employees involved in this dispute were not final policymakers and that two emergency demolitions (this case and a case involving a non-related Plaintiff (RB III)) cannot constitute a custom or policy. There is no doubt that the Plaintiff's pleadings and the history of this litigation have contributed to the inclusion of confusing and multi-prong arguments.[14] The Court, however, understands Plaintiff's complaint to also be based upon the City Council's adoption of Code 6-175, not a custom or practice engaged in by certain employees. To the extent that Plaintiff's claim is based upon an alleged custom or practice other than one set forth in the City Code, the City's motion for summary judgment is well taken and granted. *See Raymond v. Ector County, Tex., supra*. To the extent that Plaintiff's section 1983 claims are based upon the City Council's adoption and application of 6-175, the City's motion is denied.

Inasmuch as Plaintiff has established the first two elements under *Monell*, the Court then turns to the third element - violation of constitutional rights whose "moving force" is the policy. The City argues that the "record establishes that Plaintiff was the victim of unfortunate timing, but not constitutional deprivations."[15]

In its opinion remanding this case, the Fifth Circuit stated that "the City's actions may be excused for procedural due process purposes only if the imminent-danger determination was not an abuse of discretion." *Kinnison,* 480 Fed. Appx. at 278. The Fifth Circuit held that it could not render judgment for the City "because the record contains evidence suggesting that the City's imminent-danger determination was an abuse of discretion." *Id*. at 279. The Fifth Circuit noted

---

[14] Plaintiff includes statements such as the following in his complaint that lead to confusion as to what he is alleging: "Plaintiff alleges that the actions of the Defendants, within or without the aegis of an apparently duly ratified ordinance 6-175, constitute not only a procedural due process of the 4th Amendment, but an arbitrary and capricious violation of Plaintiff's due process rights under the 4th Amendment." Docket number 179 at ¶ 8.3.
[15] City's motion for summary judgment, docket number 194 at page 7.

that the property was determined to be an imminent danger in 2006, but the City did not demolish the property and the then owner of the property made repairs. "Kinnison, however, was not afforded the same opportunity in 2008, despite the fact that same structural deficiencies identified in 2006 had yet to cause the Property's ostensibly 'imminent' collapse. The City, moreover, effected the demolition even though Kinnison's contractor was on-site and repairing the Property *when the demolition crew arrived*." *Id*. at 280 (emphasis in original). Accordingly, in accordance with the Fifth Circuit's opinion, Kinnison's Fourteenth Amendment procedural due process claim and his Fourth Amendment unreasonable seizure claim shall proceed to trial.

## Conclusion

Defendant's motion to exclude Ann McGlone as an expert witness (docket no. 193) is granted in part and denied in part. The City's motion for summary judgment (docket no. 194) is granted in part and denied in part.

SIGNED this 22nd day of January, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE